**ORAL ARGUMENT NOT YET SCHEDULED**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————————

**No. 25-3059
Consolidated with 25-3074, 25-3076, 25-3078, 25-3093**

———————————————————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

v.

JOHN EARLE SULLIVAN
*Defendant-Appellant*

———————————————————

CONSOLIDATED APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————————————————

**BRIEF FOR APPELLANTS SULLIVAN, HAGER, CUA, AND KINNISON**

———————————————————

STEVEN R. KIERSH
Law Offices of Steven R. Kiersh
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
(202) 347-0200
*Counsel for John Earle Sullivan*

KATIE HURRELBRINK
Federal Defenders of San Deigo, Inc.
225 Broadway
Suite 900
San Diego, CA 92101
(619) 234-8467
*Counsel for Stacy Wade Hager*

A.J. KRAMER
Federal Public Defender

ROSANNA M. TAORMINA
Assistant Federal Public Defender
625 Indiana Avenue, NW
Washington, DC 20004
(202) 208-7500
*Counsel for Bruno Cua*

RENE VALLADARES
Federal Public Defender

ROHIT RAJAN
Assistant Federal Public Defender
411 E. Bonneville Avenue, Suite 250
Las Vegas, NV 89101
(702) 388-6261
*Counsel for Derek Kinnison*

District Court Nos. 21-cr-00078-RCL (Sullivan), 21-cr-00381-TSC (Hager), 21-cr-00107-RDM (Cua), 21-00392-RCL-5 (Kinnison)

<u>**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**</u>

Pursuant to D.C. Circuit Rule 28(a)(1), appellants John Sullivan, Stacy Hager, Bruno Cua, and Derek Kinnison hereby state as follows:

**A.      Parties and Amici:**

This consolidated appeal arises from criminal prosecutions of appellants John Sullivan, Bruno Cua, Stacy Hager, and Derek Kinnison, by appellee, the United States of America.  After the government informed this Court that it would not defend the decisions appealed, on November 25, 2025, the Court appointed Catherine Stetson of the University of Virginia School of Law Appellate Litigation Clinic to present arguments in support of the district court orders.  The related appeal of Hector Emmanual Vargas Santos (Case No. 25-3074) was consolidated with appellants' cases that same day.  Mr. Vargas filed a separate opening brief on September 17/19, 2025, before this Court issued its consolidation order.

**B.      Rulings Under Review:**

This is a consolidated appeal from final district court orders denying requests for the return of criminal monetary penalties paid pursuant to vacated convictions.  The district court (the Honorable Royce C. Lambert) denied Mr. Sullivan's request on May 20, 2025.  The district court (the Honorable Randolph D. Moss) denied Mr. Cua's request on June 30, 2025, and denied reconsideration on July 25, 2025.  The district court (the Honorable Tanya S. Chutkan) denied Mr.

Hager's motion on July 3, 2025.  And the district court (the Honorable Royce C. Lamberth) denied Mr. Kinnison's motion on August 13, 2025.  In this consolidated appeal, appellants seek review of these orders denying their refund requests.

### C.    Related Cases:

Each appellant's case has previously been before this Court on direct appeal:

- *United States v. John Sullivan*, No. 24-3051

- *United States v. Bruno Cua*, No. 23-3137

- *United States v. Stacy Hager*, No. 23-3130

- *United States v. Derek Kinnison*, No. 24-3047

The following cases have raised the same issue about the appropriateness of refunds in this context:

- *United States v. Ballenger*, No. 21-cr-719 (D.D.C.) (Boasberg, J.)

- *United States v. St Cyr*, No. 22-cr-185 (D.D.C.) (Bates, J.)

- *United States v. Sutton*, No. 21-cr-0598 (D.D.C.) (Friedman, J.)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

TABLE OF ABBREVIATIONS ........................................................................ vii

JURISDICTIONAL STATEMENT ....................................................................1

RULE 28(f) AUTHORITIES...............................................................................1

ISSUES PRESENTED..........................................................................................2

STATEMENT OF THE CASE.............................................................................3

     A.    Appellants................................................................................3

     B.    President Trump's January 20, 2025 Proclamation and Subsequent Case Dismissals ................................................................................3

     C.    Return of Fees Litigation.......................................................5

         1.    Sullivan ....................................................................6

         2.    Cua, Ballenger, & Hager.........................................7

         3.    Kinnison ................................................................10

     D.    Related Cases Granting Return Requests..............................11

     E.    Consolidation Order ............................................................13

SUMMARY OF ARGUMENT ...........................................................................13

STANDARD OF REVIEW .................................................................................14

ARGUMENT ......................................................................................................14

    I.    A DEFENDANT WHOSE CONVICTION IS VACATED ON APPEAL HAS A RIGHT TO RECOVER MONETARY PENALTIES PAID PURSUANT TO THAT CONVICTION ................................................14

    II.    THE APPROPRIATIONS CLAUSE POSES NO BARRIER TO RELIEF ................................................19

A. The Judgment Fund Authorizes Refunds ............................................. 20

    1. Equitable Principles ................................................................ 21

    2. Little Tucker Act .................................................................. 26

    3. 28 U.S.C. § 2465 .................................................................. 28

B. Refunds Are Also Appropriate Because Criminal Monetary Penalties Deposited in the Treasury Pursuant to a Non-Final Conviction Are Erroneously Received ............................................................................... 30

C. Constitutional Avoidance Requires Construing These Statutes Broadly ............................................................................................................... 32

D. Sovereign Immunity Does Not Bar Recovery ................................... 33

CONCLUSION ..................................................................................................... 35

CERTIFICATE OF COMPLIANCE ................................................................... 36

CERTIFICATE OF SERVICE ............................................................................ 36

**Cases**

*Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134 (1919)................22

*Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728 (1982)...........................26

*Atl. Coast Line R. Co. v. Florida*, 295 U.S. 301 (1935) ........................................24

*Balt. & Ohio R.R. Co. v. United States*, 279 U.S. 781 (1929) ................................22

*Bank of U.S. v. Bank of Wash.*, 31 U.S. 8 (1832) ..............................................21, 22

*Bowman v. United States*, 35 Fed. Cl. 397 (Fed. Cl. 1996)..............................30, 31

*Brownback v. King*, 592 U.S. 209 (2021).............................................................24

*Bull v. United States*, 295 U.S. 247 (1935).........................................................34

*Cohens v. Virginia*, 19 U.S. 264 (1821)..............................................................32

*DeCecco v. United States*, 485 F.2d 372 (1st Cir. 1973)........................................27

*Ellis v. Railway Clerks*, 466 U.S. 435 (1984).................................................17, 18

*Erwin v. Lowry*, 48 U.S. 172 (1849)...................................................................22

*First Va. Bank v. Randolph*, 110 F.3d 75 (D.C. Cir. 1997)....................................33

*Fischer v. United States*, 603 U.S. 480 (2024) ............................................3, 9, 11, 29

*Hewitt v. United States*, 606 U.S. 419 (2025)..............................................15, 16, 31

*In re Morris' Cotton*, 75 U.S. 507 (1869)............................................................24

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) .........................................................32

*Kizas v. Webster*, 707 F.2d 524 (D.C. Cir. 1983)................................................26

*Knote v. United States*, 95 U.S. 149 (1877)....................... 6, 7, 8, 11, 12, 16, 19, 31

*Maine Cmty. Health Options v. United States*, 590 U.S. 296 (2020)......................21

*Nat'l Presto Indus., Inc. v. United States*, 219 Ct. Cl. 626 (Fed. Cl. 1979) ............30

*Neely v. United States*, 546 F.2d 1059 (3d Cir. 1976) ..............................................27

*Nelson v. Colorado*, 581 U.S. 128 (2017) ..................................................................
.................................................. 5, 6, 9, 12, 15, 16, 19, 23, 24, 25, 26, 29, 32

*Nw. Fuel Co. v. Brock*, 139 U.S. 216 (1891) ......................................................21, 22

*Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414 (1990) ........................21, 33

*Osborn v. United States*, 91 U.S. 474 (1875) ............................................................16

*Pasha v. United States*, 484 F.2d 630 (7th Cir. 1973) ..............................................27

*Ray v. United States*, 481 U.S. 736 (1987) ................................................................18

*Republic National Bank of Miami v. United States*, 506 U.S. 80 (1992) ...................
.................................................................................6, 20, 28, 29, 30, 31

*State v. Danielson*, 809 P.2d 937 (Alaska Ct. App. 1991) ........................................34

*Synagogue v. United States*, 482 F.3d 1058 (9th Cir. 2007) ..............................29, 30

*Thompson v. Kennickell*, 797 F.2d 1015 (D.C. Cir. 1986) ......................................21

*Tyler v. Defrees*, 78 U.S. 331 (1870) ........................................................................20

*United States v. Ajrawat*, 738 F. App'x 136 (4th Cir. 2018)......................................7

*United States v. Alberts*, No. 23-3128 (D.C. Cir.) ..................................................4, 9

*United States v. Ballenger*, No. 21-cr-719, 2025 WL 3467569 (D.D.C. Dec. 3, 2025)
..................................................... 12, 14, 17, 18, 19, 21, 22, 23, 24, 31, 34

*United States v. Burdeau*, 168 F.3d 352 (9th Cir. 1999) ............................................4

*United States v. Campenella*, No. 2:07-cr-00431-JD (E.D. Pa.) ............................24

*United States v. Clark*, 445 U.S. 23 (1980) ..............................................................32

*United States v. DeFries*, 129 F.3d 1293 (D.C. Cir. 1997) ........................................5

*United States v. Hansen*, 906 F. Supp. 688 (D.D.C. 1995) ......................................27

*United States v. Hawkins*, 124 F.3d 205 (7th Cir. 1997) ...........................................18

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ......................................23

*United States v. Kenny*, 846 F.3d 373 (D.C. Cir. 2017) .............................................7

*United States v. Lewis*, 478 F.2d 835 (5th Cir. 1973).........................................23, 27

*United States v. Lyons*, No. 21-cr-79-BAH (D.D.C.) ..............................................11

*United States v. Morgan*, 307 U.S. 183 (1939) ......................................................22

*United States v. Navajo Nation*, 556 U.S. 287 (2009) ...........................................33

*United States v. Nwoye*, No. 07-cr-00012-ESH (D.D.C.).........................................23

*United States v. Pogue*, 19 F.3d 663 (D.C. Cir. 1994) ............................................17

*United States v. Reynolds*, 98 F.4th 62 (1st Cir. 2024)...........................................25

*United States v. Ringgold*, 33 U.S. 150 (1834)......................................................34

*United States v. Schaffer*, 240 F.3d 35 (D.C. Cir. 2001) ........................4, 16, 17, 25

*United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in U.S. Currency*, 859 F.3d 1085 (D.C. Cir. 2017) ....................................................28

*United States v. Sherwood*, 312 U.S. 584 (1941) ...................................................33

*United States v. St. Cyr*, 804 F. Supp. 3d 1 (D.D.C. 2025) ........................................
..................................................................... 12, 14, 17, 25, 26, 27, 31

*United States v. Sullivan*, 783 F. Supp. 3d 385 (D.D.C. 2025) ...............7, 10, 11, 25

*United States v. Sutton*, No. 21-0598, 2025 WL 2149396 (D.D.C. July 15, 2025)
..........................................................................................................11, 20

*United States v. Testan*, 424 U.S. 392 (1976)........................................................26

*United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506 (1940)...........................33, 34

*United States v. Vargas*, 789 F. Supp. 3d 60 (D.D.C. 2025)................................9, 31

*United States v. Wallen*, No. 9:15-cr-00011-DLC-1 (D. Mont.) ...........................24

*United States v. Webster*, 102 F.4th 471 (D.C. Cir. 2024) ......................................14

*United States v. Wilson*, 540 F.2d 1100 (D.C. Cir. 1976) ................................23, 27

*U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339 (D.C. Cir. 2012) ........32

**Constitutional Provisions, Federal Rules, Statutes, & Regulations**

Appropriations Clause, U.S. Const. Article 1, Section 9, Clause 7...................13, 19

Due Process Clause, Fifth Amendment ...................................................................26

Federal Rule of Criminal Procedure 48 ....................................................................4

18 U.S.C. § 981 ..................................................................................................15, 29

18 U.S.C. § 1512 .........................................................................................3, 9, 11, 29

18 U.S.C. § 3013 ..................................................................................................15, 18

18 U.S.C. § 3663 ......................................................................................................15

18 U.S.C. § 3663A ...................................................................................................15

28 U.S.C. § 1346 ................................................................................12, 14, 20, 26, 33

28 U.S.C. § 2414 ......................................................................................................21

28 U.S.C. § 2461 ..................................................................................................15, 29

28 U.S.C. § 2465 .............................................................................7, 14, 20, 28, 29

31 U.S.C. § 1304 ...........................................................................12, 14, 20, 21, 24, 5

31 U.S.C. § 1322 ........................................................... 10, 14, 20, 30, 31, 32

28 C.F.R. § 8.5 ..........................................................................................................6

**Miscellaneous Authorities**

Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025)..............................3, 4

Restatement (Third) of Restitution and Unjust Enrichment § 18 (2011) ................22

# TABLE OF ABBREVIATIONS

AFF ...................................................................... Asset Forfeiture Fund

ECF: ................................................Electronic Case Filing System citation

JA: ............................................................Joint Appendix citation

SADF............................................................ Seized Asset Deposit Fund

USMS...............................................................United States Marshal's Service

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 25-3059**
**Consolidated with 25-3074, 25-3076, 25-3078, 25-3093**

_____

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

v.

JOHN EARLE SULLIVAN
*Defendant-Appellant*

_____

CONSOLIDATED APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

_____

**BRIEF FOR APPELLANTS SULLIVAN, CUA, HAGER, AND KINNISON**
_____

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231. This Court has

jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## RULE 28(f) AUTHORITIES

Pursuant to Federal Rule of Appellate Procedure 28(f), relevant authorities

are set forth in appellants' Addendum.

# ISSUES PRESENTED

1. Whether an individual whose conviction is vacated and indictment is dismissed is entitled to the return of criminal monetary penalties paid pursuant to his vacated conviction.

2. Whether the Appropriations Clause prevents a district court from ordering the return of criminal monetary penalties when an individual's conviction is vacated and his indictment is dismissed.

**STATEMENT OF THE CASE**

**A.     Appellants**

Appellants John Sullivan, Bruno Cua, Stacy Hager, and Derek Kinnison were separately charged and sentenced for various offenses related to their alleged conduct in or near the U.S. Capitol on January 6, 2021.  As part of their sentences, Mr. Sullivan was ordered to pay a $520 special assessment and $2,000 in restitution,[1] and to forfeit his interest in two accounts totaling $90,875[2] (JA:41-42); Mr. Cua was ordered to pay a $200 special assessment and $2,000 in restitution (JA:129); Mr. Hager was ordered to pay a $70 special assessment and $500 in restitution (JA:195); and Mr. Kinnison was ordered to pay a $350 special assessment and $2,000 in restitution (JA:281).  Each appealed his conviction and sentence.  (JA:43; JA:131; JA:197; JA:283.)

**B.     President Trump's January 20, 2025 Proclamation and Subsequent Case Dismissals**

While appellants' appeals were pending, on January 20, 2025, President Trump issued a proclamation granting "a full, complete and unconditional pardon" to most individuals convicted of offenses "related to events that occurred at or near

---

[1]  Restitution was ordered paid to the Clerk of Court for disbursement to the Architect of the Capitol, Office of the Chief Financial Officer.  (*See, e.g.*, JA:41.)

[2]  The forfeiture allegation was tied to his 18 U.S.C. § 1512(c) charge (JA:33), later invalidated by *Fischer v. United States*, 603 U.S. 480 (2024).

the United States Capitol on January 6, 2021" and, as relevant here, directing the Attorney General "to pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025). Accordingly, with respect to cases pending appeal where the defendant's conviction had not become final, the government began filing motions to vacate convictions and remand for dismissal under Federal Rule of Criminal Procedure 48(a). (JA:44-47; JA:133-136; JA:198-201; JA:284-287 (all citing, *inter alia*, *United States v. Burdeau*, 168 F.3d 352, 359 (9th Cir. 1999), for proposition that under Rule 48(a) "the government has the power to move to dismiss any count of the indictment as long as the defendant's appeal is pending and the decision is therefore not final").)

Citing *United States v. Schaffer*, 240 F.3d 35, 37-38 (D.C. Cir. 2001) (en banc) (per curiam), this Court granted the government's motion in each case, vacated appellants' convictions, and remanded for dismissal.[3] (JA:49; JA:138; JA:203; JA:289.) On remand, each case was dismissed. (JA:50; JA:116; JA:185; JA:290.)

---

[3] Those defendants who wished to continue with their appeals despite the president's pardon were rebuffed by this Court, which — as here — dismissed the appeals as moot. *See, e.g.*, *United States v. Alberts*, No. 23-3128 (D.C. Cir.).

## C. Return of Fees Litigation

Following dismissal, appellants separately filed motions for the return of all monetary penalties paid or property seized in connection with their now-vacated convictions, citing, *inter alia*, *Nelson v. Colorado*, 581 U.S. 128, 130 (2017), which held that "[w]hen a criminal conviction is invalidated by a reviewing court and no retrial will occur . . . the State [is] obliged to refund fees, court costs, and restitution." (JA:51-54; JA:139-49; JA:204-09; JA:291-304.)

The government supported each appellant's request, asserting that had appellants simply been pardoned, they would not be entitled to refunds. (*See, e.g.*, JA:151-52.) But appellants were "not just pardoned"; this Court had vacated their convictions and ordered dismissal. (JA:152.) "In this unusual situation," the government agreed that *Nelson* applied. (*Id.*)

For Mr. Sullivan, who had sought return of funds seized under federal forfeiture statutes, the government cited, *inter alia*, this Court's decision in *United States v. DeFries*, 129 F.3d 1293, 1312 (D.C. Cir. 1997), which recognized that "[b]ecause we reverse appellants' RICO convictions, the accompanying forfeitures must also be reversed." (JA:56.) Accordingly, the government would "commence steps to return any funds seized from defendant" under the invalidated forfeiture order. (*Id.*)

After the government's response, Judge Lamberth, *sua sponte*, ordered the government in *Sullivan* (on April 12, 2025) and *Kinnison* (on June 4, 2025) to file notices informing the court "as to the location of [Sullivan and Kinnison's] funds" and whether the funds "have ever passed into the custody of the United States Treasury." (JA:60; JA:253.) In doing so, the court cited *Knote v. United States*, 95 U.S. 149, 153-54 (1877), which held that, under the Appropriations Clause, moneys vested in the U.S. Treasury cannot be disbursed without a congressional appropriation despite the claimant's pardon. (JA:59.)

### 1.    Sullivan

The government reported that Mr. Sullivan's seized funds had been held pretrial in an FBI account and then transferred to the U.S. Marshal's Service's ("USMS") Seized Asset Deposit Fund ("SADF"). (JA:61-62.) The USMS tracks funds in the SADF pending final decision on forfeiture and either transfers it to the Asset Forfeiture Fund ("AFF") if forfeiture is approved or returns it to the owner if forfeiture is denied. (*Id.*) Sullivan's funds remained in the SADF. (JA:62.)

The government reiterated its position that *Nelson* should govern, but if the court applied *Knote*, "it should conclude that the funds remain in the custody of the USMS," citing Department of Justice forfeiture regulations, 28 C.F.R. § 8.5(a), (b). (JA:62-63.) The government further noted that *Republic National Bank of Miami v. United States*, 506 U.S. 80, 96 (1992), applied the *Knote* framework to the

6

proceeds of forfeited property sold pending appeal and placed in the AFF, but found an appropriation in 28 U.S.C. § 2465, which expressly addresses the return of seized property. (JA:64 n.2.)

On May 20, 2025, Judge Lamberth denied Mr. Sullivan's motion, relying on *Knote* and explaining that "it is irrelevant whether Mr. Sullivan's convictions were vitiated by pardon, vacatur on appeal, collateral attack, retroactive Congressional enactment, or by any other means. All that matters is that funds may not be drawn from the Treasury without an appropriation, plain and simple."[4] *United States v. Sullivan*, 783 F. Supp. 3d 385, 391 (D.D.C. 2025). Because the court was "[u]naware" of any appropriation statute authorizing the return of forfeited funds to a criminal defendant "upon vacatur of his or her conviction(s) or the receipt of a pardon," the court found that neither it nor the government had the authority to effectuate their return. *Id.* at 393-94.

### 2. Cua, Ballenger, & Hager

After Judge Lamberth's decision in *Sullivan*, Judge Moss denied Mr. Cua's motion on June 30, 2025. (JA:154-62.) While Judge Moss also relied on *Knote*'s

---

[4] Judge Lamberth disregarded cases wherein courts ordered refunds after vacating convictions, *see, e.g.*, *United States v. Ajrawat*, 738 F. App'x 136, 139 (4th Cir. 2018), reasoning that "[n]ot a single one of these cases confronts the Appropriations Clause implications of its decision," *Sullivan*, 783 F. Supp. 3d at 391; *but see United States v. Kenny*, 846 F.3d 373, 376 (D.C. Cir. 2017) (a federal court is "presumed to know the law and apply it correctly").

Appropriations Clause discussion, he went further, asserting that *Knote* stood for the proposition that "a pardoned individual is not 'entitle[d]' to payments that have already been deposited into the United States Treasury, absent congressional authorization to withdraw the funds" because — according to Judge Moss — a vacatur post pardon differs from other vacaturs. (JA:160 (quoting *Knote*, 95 U.S. at 152, for word "entitle"[5])); *see also, e.g., id.* (asserting that "[t]he vacatur of a conviction *for reasons other than a pardon* generally renders the conviction void *ab initio*" (emphasis added)); JA:167 (on reconsideration, asserting "here, . . . Cua's convictions were not 'reversed' or invalidated[; i]nstead, the Court of Appeals ordered vacatur because the pardon rendered the case 'moot'"); *id.* ("[W]here a case becomes moot due to the fortuity of a presidential pardon, vacatur does not carry the same consequences as it would in a case where a conviction is reversed or otherwise invalidated."); *but see* JA:168 (citing with approval case wherein conviction was voided *ab initio* due to death of defendant while appeal was pending).)

---

[5] The full sentence in *Knote* containing "entitle" reads: "The general pardon and amnesty granted by President Johnson, by proclamation, on the 25th of December, 1868, do not entitle one receiving their benefits to the proceeds of his property, previously condemned and sold under the confiscation act of July 17, 1862 (12 Stat. 589), after such proceeds have been paid into the treasury of the United States."

Relying on Judge Moss's decision in *Vargas* (issued three days prior to *Cua* and identical in reasoning), Judge Boasberg initially denied the return of funds request in *United States v. Ballenger*, No. 21-cr-719 (D.D.C.), ECF:176, on June 30, 2025; and Judge Chutkan denied Mr. Hager's motion on July 3, 2025 (JA:214-16). The movants in *Ballenger* sought reconsideration (ECF:177), discussed below.

Mr. Cua also sought reconsideration (JA:163-65), which Judge Moss denied. Judge Moss noted that Mr. Cua's 18 U.S.C. § 1512(c) conviction warranted separate consideration, as the government had declined to defend the conviction on appeal in light of *Fischer*. (JA:168.) According to Judge Moss, "[h]ad the appellate process run its course, it seems likely that the Court of Appeals would have set his § 1512(c) conviction aside, and, under *Nelson . . .* , he may have been entitled to a refund of his payments attributable to that conviction." [6] (*Id.*) But because Mr. Cua received a pardon — "which did not entitle him to a refund" — before his appeal was adjudicated on its merits, Judge Moss surmised that Cua's only potential course of relief would be to seek a writ of error coram nobis. (*Id.*)

---

[6] Judge Moss faulted Mr. Cua for not opposing the government's motion to dismiss "so that he could continue to press his claim *on the merits* in the hope of obtaining retrospective, make-whole relief" (JA:168). *But see Alberts*, No. 23-3128, Doc. 2096410 (D.C. Cir. Jan. 24, 2025) (granting government's motion to vacate over appellant's opposition).

The court did not address whether/how the Appropriations Clause would affect the ability to recover via such a writ.

**3. Kinnison**

In response to Judge Lamberth's *sua sponte* order seeking the location of Mr. Kinnison's monetary penalties, the government reported that his special assessment had been paid to the Clerk of Court and then deposited in the Crime Victims' Fund before his conviction had become final. (JA:311.) Restitution had also been paid to the Clerk and disbursed using the Intra-governmental Payment and Collection System to the Architect of the Capitol. (*Id.*) Additionally, during his incarceration, the Bureau of Prisons sent payments from Mr. Kinnison's inmate account toward his monetary penalties *after* they had been paid in full, leading to overpayments. The government reported that these overpayments either had been or will be "administratively corrected." (*Id.*)

Because its response in *Kinnison* was submitted after Judge Lamberth had already ruled in *Sullivan*, the government alerted the court to 31 U.S.C. § 1322(b)(2), which authorizes the refund of monies erroneously received that are not properly chargeable to another appropriation; and Chapter 6, Section 3045 of the Treasury Financial Manual, which addresses the refund of amounts erroneously credited to an appropriation account. (JA:312-13.)

On August 13, 2025, Judge Lamberth denied Mr. Kinnison's motion, seemingly expanding his *Sullivan* reasoning to include Judge Moss's entitlement analysis (*see, e.g.*, JA:317 ("[H]ere, the defendant's conviction was not reversed; rather, the only reason the conviction was vacated by the Circuit is that the defendant received a presidential pardon.")), which he used as the basis for rejecting 31 U.S.C. § 1322(b)(2) as an appropriation permitting refund of funds erroneously deposited (JA:318). The court did not address Mr. Kinnison's overpayments.

**D.      Related Cases Granting Return Requests**

To appellants' knowledge, three district court judges have ordered the return of monetary penalties to individuals whose convictions were vacated following a pardon by President Trump.[7] In *United States v. Sutton*, No. 21-0598, 2025 WL 2149396, *2 (D.D.C. July 15, 2025), Judge Friedman ordered the return of $100 of Mr. Sutton's $300 special assessment, as it had yet to be deposited in the Crime Victims Fund and instead remained in "an internal account within the judiciary." The $200 deposited in the fund was retained, citing *Knote*.

---

[7] Additionally, in *United States v. Lyons*, No. 21-cr-79-BAH (D.D.C.), the district court's Finance Office refunded Mr. Lyons's special assessment *sua sponte* when Judge Howell granted his 28 U.S.C. § 2255 motion and vacated his § 1512(c) conviction post-*Fischer*.

Judge Bates in *United States v. St. Cyr*, 804 F. Supp. 3d 1 (D.D.C. 2025), and Judge Boasberg in *United States v. Ballenger*, No. 21-cr-719, 2025 WL 3467569 (D.D.C. Dec. 3, 2025), granted the refund requests in full. Relying on *Nelson*, Judge Bates explained that the vacatur of St. Cyr's conviction had restored her right to — and ridded the government of its right to retain — money paid to the government based on her conviction. *Id.* at 6. In response to *Knote*, Judge Bates found that "the Little Tucker Act gives this Court the power to order that [the money] be returned to her, and 31 U.S.C. § 1304(a) allows the government to comply consistent with the Appropriations Clause." *Id.*

In *Ballenger*, Judge Boasberg — who had originally denied the movants' return requests — granted reconsideration, explaining that he had previously focused on whether the *pardon* entitled movants to a refund, without considering the resulting *vacatur* of their convictions. 2025 WL 3467569, at *1-2. Viewing the question "afresh," Judge Boasberg concluded that "[w]hen a conviction is vacated, the Government must return any payments exacted because of it[; and n]either the Appropriations Clause nor sovereign immunity bars that repayment." *Id.* at *1; *see also id.* at *5 (relying on 31 U.S.C. § 1304, which appropriates "[n]ecessary amounts . . . to pay final judgments" against the United States once court exercises its inherent power to order the return of funds).

**E.    Consolidation Order**

Messrs. Sullivan, Cua, Hager, and Kinnison filed timely notices of appeal. (JA:79; JA:163; JA:217; JA:319.)  On November 25, 2025, this Court ordered the consolidation of Case Nos. 25-3059, 25-3074, 25-3076, 25-3078, and 25-3093, and appointed an amicus to present arguments in support of the challenged district court orders, as the government had informed the Court that it would not defend those decisions.  (Doc:2147175.)

## SUMMARY OF ARGUMENT

Appellants must receive refunds of their conviction-dependent monetary penalties.  Because their convictions were on appeal and thus not final when the president issued his January 20, 2025 proclamation, this Court vacated appellants' convictions and remanded for dismissal on mootness grounds.  It is this vacatur, not the president's pardon, that requires refunds.  A vacated conviction is void *ab initio*, regardless of the vacatur's basis.  Here, this Court's vacatur for mootness demonstrates that no further proceedings were necessary to establish appellants' entitlement to the return of their conviction-dependent fees.

The Appropriations Clause does not bar relief.  For starters, the clause does not apply.  Certain moneys remain in the custody of the Executive; and because finality was not reached on appellants' convictions, ownership of their conviction-dependent penalties never vested in the United States.  Even if the clause applies,

however, valid appropriations authorize refunds.  Appellants are entitled to refund judgments under longstanding equitable principles, the Little Tucker Act, or 28 U.S.C. § 2465, which covers the return of forfeited property.  The Judgment Fund, 31 U.S.C. § 1304, allows the government to pay these judgments.  Apart from the Judgment Fund, 31 U.S.C. § 1322(b) permits recovery of these erroneously-collected funds.  These statutes should be interpreted broadly to avoid depriving appellants of due process.  And sovereign immunity does not apply.  Appellants' funds should thus be returned to them forthwith.

## STANDARD OF REVIEW

This Court reviews legal questions *de novo*.  *United States v. Webster*, 102 F.4th 471, 478 (D.C. Cir. 2024).

## ARGUMENT

I.   **A DEFENDANT WHOSE CONVICTION IS VACATED ON APPEAL HAS A RIGHT TO RECOVER MONETARY PENALTIES PAID PURSUANT TO THAT CONVICTION.**[8]

Appellants are a small subset of individuals previously charged with offenses related to the events of January 6, 2021.  Because their cases were still on appeal and had not become final when the president issued his proclamation,

---

[8]  Mindful of this Court's admonition to avoid repetitive arguments (Doc:2147175), appellants here incorporate the thorough analyses of Judges Bates and Boasberg in *St. Cyr* (Section I) and *Ballenger* (Section IIA).

appellants were not simply pardoned.  Per the government's request, their

convictions were vacated and their cases were dismissed.  It is the vacatur of their

convictions — not their pardons — that forms the basis for appellants' requests to

be refunded all monetary penalties paid pursuant to those convictions.  Without

valid convictions to anchor its entitlement to such penalties, the Supreme Court has

recognized that the government has "no legal right" to "retain" them.  *Nelson*, 581

U.S. at 132; *see also id.* at 139 (recognizing defendants' due process interest in

regaining their funds).  Indeed, the statutes authorizing the collection of restitution,

the special assessment, and forfeited property all require a valid conviction.  *See* 18

U.S.C. § 3013 (special assessment); 18 U.S.C. §§ 3663, 3663A (restitution); 18

U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461 (forfeiture).

Appellants here do not have valid convictions.  "[V]acated orders are void

*ab initio*," and so "the law acts as though the vacated order never occurred."

*Hewitt v. United States*, 606 U.S. 419, 431 (2025).  Accordingly, when an

individual's conviction is vacated, he "is to be treated going forward as though he

were never convicted."  *Id.*; *see also Nelson*, 581 U.S. at 135 ("[O]nce

[defendants'] convictions were erased, the presumption of their innocence was

restored.").  The reason for the vacatur is immaterial.  "[R]eversal is reversal,

regardless of the reason."  *Nelson*, 581 U.S. at 136 n.10 (citation modified).

Despite Judge Moss's suggestion otherwise (JA:167), there is no legal difference

between a conviction that is "reversed" and one that is vacated. *See Nelson*, 581 U.S. at 135 (making no distinction between cases that have been "reversed or vacated"); *Hewitt*, 606 U.S. at 432 n.8 (equating "overturned" with "vacated").

The Supreme Court's decision in *Knote* does not undermine this. *Knote* simply held that President Johnson's pardon and amnesty did "not entitle one receiving their benefits to the proceeds of his property, previously condemned and sold under the confiscation act of July 17, 1862 (12 Stat. 589), after such proceeds have been paid into the treasury of the United States." 95 U.S. at 152. Indeed, *Knote* — which did not involve a criminal conviction, but instead an act of Congress that authorized seizure of property belonging to supporters of the Confederacy — expressly recognized that if the right to the property or proceeds had not yet vested in the United States at the time of the pardon, it *could* be returned. *Knote*, 95 U.S. at 154; *see also Osborn v. United States*, 91 U.S. 474 (1875) (cited in *Knote*).

Beyond bypassing the principles of *Nelson* and *Hewitt* for the false dichotomy of *Knote*, the judges who found that post-pardon vacatur does not "entitle" former defendants to the return of fees did so without addressing the singular legal authority this Court cited in vacating appellants' convictions: *United States v. Schaffer*, 240 F.3d 35 (2001). In *Schaffer*, the defendant received a pardon while his appeal was pending in this Court. While the parties agreed that

16

the pardon rendered the appeal moot, the government made what this Court referred to as "the odd suggestion that Schaffer's conviction is [nevertheless] established as a matter of law." *Id.* at 38. This Court squarely rejected that proposition, demonstrating error in any suggestion that the post-pardon vacatur of appellants' convictions did not "invalidate" them. *Id.* ("[T]he independent counsel is wrong to suggest that Schaffer's conviction is a *fait accompli*."). Because the appellate process had not run its course, "[f]inality was never reached on the *legal question* of Schaffer's guilt." *Id.* Thus, "the efficacy of the jury verdict against Schaffer remains only an unanswered question lost to the same mootness that the independent counsel so readily concedes." *Id.* Accordingly, this Court vacated Schaffer's conviction and remanded with directions to dismiss the case as moot. *Id.* Courts act similarly when a defendant dies during the pendency of his appeal. *See United States v. Pogue*, 19 F.3d 663, 665-66 (D.C. Cir. 1994); *see also Ballenger*, 2025 WL 3467569, at *2-3 (citing cases holding that when a defendant dies while his appeal is pending, the government must return any penalties to his estate after his conviction is vacated); *St. Cyr*, 804 F. Supp. 3d at 9 n.8 (same).

This Court's reliance on mootness to vacate appellants' convictions has broader implications for the question presented here. As the Supreme Court has recognized, "as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ellis v. Railway Clerks*, 466 U.S.

17

435, 442 (1984). In other words, an appellate court can dismiss a case as moot only if there exists no right that remains under dispute. Thus, if appellants' entitlement to their monetary penalties was a question dependent on *how/why* their convictions were vacated, as Judge Moss suggests, this Court would not have ordered their cases dismissed as moot despite their pardons.

In *United States v. Hawkins*, 124 F.3d 205 (7th Cir. 1997), the Seventh Circuit held that the defendant's challenge to his conviction was not moot even though he had completed his term of imprisonment, probation, and community service. The court explained:

> [The case] is not moot. . . . [T]his conviction has a financial consequence: a special assessment of $10. That is a trifle, to be sure, but the same trifle has wiped out the concurrent-sentence doctrine. *Ray v. United States*, 481 U.S. 736 (1987). No case with monetary stakes can become moot, because the money can change hands a second time to undo the original judgment.

*Id.* at *1; *see also Ray*, 481 U.S. at 737 (holding that it was error for Fifth Circuit to decline to review second of two concurrent convictions/sentences after upholding the first, reasoning that: "Since petitioner's liability to pay [§ 3013's special assessment] depends on the validity of each of his [] convictions, the sentences are not concurrent."). This Court's vacatur on mootness grounds was thus a tacit acknowledgment that its resolution of the merits would not have affected appellants' entitlement to the monetary penalties at issue.

"Appellants tried to test their convictions on appeal and could not."

*Ballenger*, 2025 WL 3467569, at *3.  They cannot now be held accountable for the absence of a ruling on the merits of their appeals when this Court adjudged their cases as moot.

*   *   *

As the Supreme Court recognized in *Nelson*, a person "adjudged guilty of no crime" cannot be presumed "nonetheless guilty *enough* for monetary extractions." 581 U.S. at 136.  Their convictions having been vacated, the criminal justice system "cannot continue to deprive [appellants] of the money those now-vacated convictions forced them to pay."  *Ballenger*, 2025 WL 3467569, at *3.

## II.   THE APPROPRIATIONS CLAUSE POSES NO BARRIER TO RELIEF.

The Appropriations Clause provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const. art. I, § 9, cl. 7.  In *Knote*, the Supreme Court held that, under the Appropriation Clause, moneys vested in the United States and deposited in the Treasury "can only be withdrawn by an appropriation by law."  95 U.S. at 154.  But "[w]here . . . property condemned, or its proceeds, have not thus vested, but remain under control of the Executive, or of officers subject to his orders, or are in the custody of the judicial tribunals, the property will be restored or its proceeds delivered to the original owner, upon his full pardon."  *Id*.  Given this distinction, the Appropriations Clause poses no obstacle to the return of funds in the possession of

the U.S. Marshal (i.e., the Executive) or fees in the Clerk of Court's internal accounts (as in *Sutton*). The remaining conviction-dependent exactions did not vest in the United States because finality had not been reached on appellants' convictions.[9] *Tyler v. Defrees*, 78 U.S. 331, 349 (1870) ("No change of the title or possession [can] be made, pending the judicial proceedings, which would defeat the final decree.").

If an appropriation is required, there is statutory authorization for refunding appellants. The Judgment Fund, 31 U.S.C. § 1304, authorizes the government to pay judgments issued against it. Appellants are entitled to such judgments under longstanding equitable principles, as Judge Boasberg observed; the Little Tucker Act, as Judge Bates concluded; or 28 U.S.C. § 2465, which covers the return of forfeited property. Alternatively, 31 U.S.C. § 1322(b) permits recovery of these erroneously-received funds. These statutes should be interpreted broadly to avoid depriving appellants of due process. And sovereign immunity does not bar relief.

### A. The Judgment Fund Authorizes Refunds.

31 U.S.C. § 1304(a) provides that "[n]ecessary amounts are appropriated to

---

[9] *Republic National Bank of Miami v. United States*, 506 U.S. 80 (1992), addressed this final category of funds. A divided Court could not agree whether the return of forfeited funds, which were held in the Treasury pending litigation to determine their ownership, required an appropriation. Because a majority found that 31 U.S.C. § 1304 and 28 U.S.C. § 2465 provided a valid appropriation, the larger question was left open.

pay final judgments" against the government.  This provision, known as the

Judgment Fund, "is a permanent and indefinite appropriation" that allows the

government to satisfy judgments "'when payment is not otherwise provided for.'"

*Maine Cmty. Health Options v. United States*, 590 U.S. 296, 306 n.3 (2020)

(quoting 31 U.S.C. § 1304(a)(1)).  Through the provision's cross-reference to 28

U.S.C. § 2414, the Judgment Fund reaches "almost all final judgments by district

courts."  *Thompson v. Kennickell*, 797 F.2d 1015, 1021 n.1 (D.C. Cir. 1986).

Although broad in its coverage, the Judgment Fund "does not create an all-

purpose fund for judicial disbursement."  *Office of Personnel Mgmt. v. Richmond*,

496 U.S. 414, 432 (1990).  Appellants need a separate entitlement to "a judgment

based on a substantive right to compensation."  *Id.*  Three different sources of

authority provide that substantive right:  longstanding equitable principles, the

Little Tucker Act, and the statute permitting the return of forfeited property.

### 1.    Equitable Principles

"Litigants have long paid judgments, then gotten those judgment[s] reversed

or vacated on appeal."  *Ballenger*, 2025 WL 3467569, at *4.  In devising how to

return those funds, courts have relied on a remedy that traces to "the law of

England from a very early period."  *Nw. Fuel Co. v. Brock*, 139 U.S. 216, 219

(1891).  This remedy says:  "On the reversal of the judgment, the law raises an

obligation in the party to the record, who has received the benefit of the erroneous

21

judgment, to make restitution to the other party for what he has lost." *Bank of U.S. v. Bank of Wash.*, 31 U.S. 8, 17 (1832). This practice has been endorsed by the Supreme Court for almost two centuries. *Ballenger*, 2025 WL 3467569, at *4 (collecting cases). And it is "so clearly consistent with the principles of equity" that its availability "goes without saying." *Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 145 (1919); *see also Balt. & Ohio R.R. Co. v. United States*, 279 U.S. 781, 786 (1929) ("The right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established.").

Under this rule, it is "the duty" of district courts "to restore the parties to their rights" and refund payments made under the reversed judgment. *Erwin v. Lowry*, 48 U.S. 172, 184 (1849). Although such circumstances may justify an unjust enrichment action, *see* Restatement (Third) of Restitution and Unjust Enrichment § 18 (2011), the victor on appeal need not launch a separate lawsuit to receive a refund. "It is a power inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process." *United States v. Morgan*, 307 U.S. 183, 197 (1939) (citation modified). Even if the appellate judgment itself does not direct a refund, a district court has independent authority to issue one. *Nw. Fuel*, 139 U.S. at 221 (recognizing "the power of a court, whose judgment is set aside on its own motion or reversed by order of an appellate tribunal, to direct restitution").

To be sure, this remedy is most often employed in civil cases.  But "this practice carried over to criminal cases."  *Nelson*, 581 U.S. at 142 (Alito, J., concurring).  "When a conviction was reversed, defendants could recover fines and monetary penalties assessed as part of the conviction."  *Id.* (collecting authorities).  Undoing the effect of vacated or reversed judgments "does not require a new action but is instead an incidental consequence" of the appellate court judgment.  *Ballenger*, 2025 WL 3467569, at *5.  Because a district court may "set aside the conviction," it can "also correct the unlawful result of the conviction and require the repayment of the money collected as fines."  *United States v. Lewis*, 478 F.2d 835, 836 (5th Cir. 1973).

This understanding of a district court's authority comports with this Court's caselaw.  Even post judgment of conviction, a district court may "determine claims closely related to and arising out of the criminal proceedings brought before it."  *United States v. Hubbard*, 650 F.2d 293, 307 (D.C. Cir. 1980).  This authority is "flexible," *id.*, and recognizes that "it is fundamental to the integrity of the criminal justice process that property involved in the proceeding, against which no Government claim lies, be returned promptly to its rightful owner," *United States v. Wilson*, 540 F.2d 1100, 1103 (D.C. Cir. 1976).  Indeed, district courts have long used this authority to order refunds on vacated judgments without controversy.  *See, e.g.*, *United States v. Nwoye*, No. 07-cr-00012-ESH, ECF:99, 100 (D.D.C.);

23

*United States v. Campenella*, No. 2:07-cr-00431-JD, ECF:74 (E.D. Pa.); *United States v. Wallen*, No. 9:15-cr-00011-DLC-1, ECF:76, 78 (D. Mont.).

Application of these principles to this case is straightforward. Each appellant had his judgment of conviction vacated by this Court. Those judgments had provided the only basis for collecting conviction-dependent penalties. Equity therefore recognizes a right to a refund, and each district judge could have vindicated this right through a refund order. Such an order would constitute a judgment because it would be a "final determination of the rights and obligations of the parties." *Brownback v. King*, 592 U.S. 209, 220 (2021) (Sotomayor, J., concurring) (quoting Black's Law Dictionary 1007 (11th ed. 2019)). "And once that judgment exists, § 1304 authorizes the United States to pay it," satisfying the Appropriations Clause. *Ballenger*, 2025 WL 3467569, at *5.

No authority permits a different conclusion. To the extent refunds must be consistent with "equity and good conscience," *Atl. Coast Line R. Co. v. Florida*, 295 U.S. 301, 309 (1935), that requirement is easily satisfied here. "[G]reat injustice would be done" if the government could enrich itself with funds to which it has no entitlement. *In re Morris' Cotton*, 75 U.S. 507, 512 (1869); *see also Nelson*, 581 U.S. at 139 (explaining that the government "has no interest in

24

withholding" money to which it "currently has zero claim of right").[10]  The circumstances behind appellants' relief from their convictions do not counsel otherwise.  For one, "reversal is reversal, regardless of the reason, and an invalid conviction is no conviction at all."  *Nelson*, 581 U.S. at 136 n.10 (citation modified).  At any rate, vacatur here was "just and appropriate."  *Schaffer*, 240 F.3d at 38.  Because of "the unpredictable grace of a presidential pardon," "finality was never reached on the legal question of [appellants'] guilt."  *Id.* (citation modified).

Lastly, *Sullivan*'s rejection of the Judgment Fund was wrong.  *Sullivan* reasoned that an order from this Court vacating a conviction "is not tantamount to a judgment *for* that defendant against the United States."  783 F. Supp. 3d at 394.  That framing misunderstands the issue.  "[I]t is not the D.C. Circuit's vacatur . . . that is creating the judgment."  *St. Cyr*, 804 F. Supp. 3d at 12 n.14.  Rather, any district court order granting a refund would create "the requisite final judgment for purposes of § 1304(a)."  *Id.*  The district courts denying relief misperceived their authority to order refunds.  Their orders should therefore be reversed.

---

[10]  There is no evidence that these funds or forfeited property have been distributed to any third party.  This Court need not decide then whether such a scenario "would call for a different result."  *United States v. Reynolds*, 98 F.4th 62, 72 (1st Cir. 2024).

### 2. Little Tucker Act

The Little Tucker Act gives district courts jurisdiction over certain claims against the United States not exceeding $10,000. 28 U.S.C. § 1346(a)(2). These claims must be founded upon some statute, regulation, contract, or constitutional provision. *Id.* Although these provisions must "specifically authorize awards of money damages," the statute recognizes an exception "for money improperly exacted or retained." *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 740 & n.11 (1982) (citation modified). This exception "is simply a recognition that the Tucker Act protects private property from illegal government levy, regardless of whether any other statute or regulation authorizes recovery." *Kizas v. Webster*, 707 F.2d 524, 538 n.74 (D.C. Cir. 1983).

Vacatur of appellants' convictions restored their right to the money paid and eliminated any government interest in retaining these funds. This right derives from the Fifth Amendment's "guarantee of due process," which provides appellants with a weighty "interest in regaining their funds." *Nelson*, 581 U.S. at 130, 139. The Little Tucker Act covers such a constitutional entitlement to money improperly retained. *See United States v. Testan*, 424 U.S. 392, 401-02 (1976).

"This conclusion breaks no new ground; courts have consistently held that the Little Tucker Act permits district courts to order the government to refund a defendant whose conviction has been invalidated." *St. Cyr*, 804 F. Supp. 3d at 12.

Courts have used the Tucker Act to authorize recovery of proceeds from the sale of forfeited property, *Pasha v. United States*, 484 F.2d 630, 633 (7th Cir. 1973); and award the return of paid fines and costs, *DeCecco v. United States*, 485 F.2d 372, 374 (1st Cir. 1973); *Neely v. United States*, 546 F.2d 1059, 1064 (3d Cir. 1976); *United States v. Hansen*, 906 F. Supp. 688, 697 (D.D.C. 1995).

It is immaterial that appellants have not instituted a separate civil suit nor sought writs of coram nobis. "[A] district court presiding over criminal proceedings has the authority to issue a judgment for the return of property that it would also be able to issue if sitting as a civil court." *St. Cyr*, 804 F. Supp. 3d at 12 (citing *Wilson*, 540 F.2d at 1103-04). Although *Wilson* did not mention the Little Tucker Act, it reaffirmed the principle that a defendant with "adequate civil remedies" need not bring "a civil action" but can seek relief in their criminal case. *Wilson*, 540 F.2d at 1104; *see also Lewis*, 478 F.2d at 836 (seeing "no reason why a person who has paid a fine pursuant to an unconstitutional statute should be required to resort to a multiplicity of actions in order to obtain reimbursement of money to which he is entitled"). A district court enjoys this authority incident to its power "to set aside the conviction." *Lewis*, 478 F.3d at 836. Assuming the district court's inherent equitable authority does not allow for refund judgments, the Little Tucker Act provides a statutory basis.

### 3. 28 U.S.C. § 2465

Separate statutory authority allows for a judgment returning Sullivan's forfeited property. The Supreme Court has identified 28 U.S.C. § 2465 as a statute that provides "a substantive right to compensation" for erroneously-forfeited property under the Judgment Fund. *Republic Nat'l Bank*, 506 U.S. at 95. This provision states that "[u]pon the entry of a judgment for the claimant in any proceeding to . . . forfeit property seized or arrested under any provision of Federal law, such property shall be returned forthwith to the claimant." 28 U.S.C. § 2465(a)(1). A claimant is someone who has an interest in the property. *United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in U.S. Currency*, 859 F.3d 1085, 1090 (D.C. Cir. 2017).

*Republic National Bank* interpreted this provision in the context of civilly-forfeited cash that had later been deposited in the Treasury. There, the appellate court thought it lost jurisdiction over the forfeiture appeal due to the movement of the money. 506 U.S. at 83. Besides reversing that jurisdictional holding, the Supreme Court rejected the government's alternative argument that the funds were now unavailable under the Appropriations Clause because they resided in the Treasury. *Id.* at 93-96. Section 2465 authorized the return of the proceeds "in the event petitioner were to prevail in the underlying forfeiture action." *Id.* at 96.

*Republic National Bank*'s understanding of § 2465 applies to Sullivan's

forfeited money.  The government sought civil forfeiture of Sullivan's money in connection with his alleged criminal conduct.[11]  (JA:33 (citing 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461).)  That money was ordered forfeited through his now-vacated criminal judgment.  (JA:42.).  Because vacatur of his conviction and dismissal of the indictment removed the only basis for forfeiture, Sullivan has "prevail[ed] in the underlying forfeiture" proceedings. *Republic Nat'l Bank*, 506 U.S. at 96.  Section 2465 "authoriz[es] the return of proceeds in such a case." *Id.*

Although § 2465(a) speaks of a refund "[u]pon entry of judgment," the vacatur of Sullivan's conviction authorized the district court to enter such a judgment.  The vacatur "restored" to Sullivan "all things which he has lost on occasion of the judgment." *Nelson*, 581 U.S. at 142 (Alito, J., concurring) (citation modified).  That restored right to these forfeited funds appears settled, as the government has not identified any entitlement to this money independent of the now-vacated judgment.  (JA:62-64.)  The district court can therefore adjudicate Sullivan's interest in this property, providing him with a judgment within the meaning of § 2465. *Synagogue v. United States*, 482 F.3d 1058, 1062 (9th Cir. 2007) (describing a forfeiture judgment as a determination "upon the respective

---

[11]  In its forfeiture allegation, the government referenced only Sullivan's 18 U.S.C. § 1512(c)(2) offense.  (JA:33.)  Sullivan's § 1512(c)(2) conviction is now invalid under *Fischer*.  But because of his pardon, Sullivan could not challenge this conviction on appeal.

rights and claims of the parties" (citation modified)).

**B.      Refunds Are Also Appropriate Because Criminal Monetary Penalties Deposited in the Treasury Pursuant to a Non-Final Conviction Are Erroneously Received.**

31 U.S.C. § 1322(b)(2) appropriates "necessary amounts" to the Treasury Secretary "to make payments from the United States Government account 'Refund of Moneys Erroneously Received and Covered' and other collections erroneously deposited that are not properly chargeable to another appropriation." If no other authority provides for refunds here, this "permanent indefinite appropriation" allows for recovery. *Republic Nat'l Bank*, 506 U.S. at 90 (Blackmun, J., concurring); *see also id.* at 94 (majority op.) (embracing § 1322(b)(2) as a valid appropriation).

Historically, this appropriation has provided for refunds in similar circumstances. It "has been interpreted to authorize, for example, the refund of charges assessed to investment advisers by the Securities and Exchange Commission and deposited in the Treasury, after those charges were held to be erroneous in light of decisions of this Court." *Id.* at 90 (Blackmun, J., concurring). The prior version of this statute similarly authorized refunds of sums held by the Treasury during litigation. *Nat'l Presto Indus., Inc. v. United States*, 219 Ct. Cl. 626, 630 (Fed. Cl. 1979). And in terms of types of funds that can be recovered, this provision extends to "sums deposited from improperly forfeited property."

30

*Bowman v. United States*, 35 Fed. Cl. 397, 401 n.7 (Fed. Cl. 1996).

The longstanding understanding of § 1322(b)(2) supports recovery. The government seized and/or the Clerk of Court collected and prematurely disbursed appellants' funds while they litigated the validity of their convictions on appeal. Because that litigation has resulted in the invalidation of those convictions, the only preliminary authorization for collecting appellants' money disappeared. *Republic Nat'l Bank*, 506 U.S. at 90 (Blackmun, J., concurring). The government has identified the "United States Government account" for "Refund of Moneys Erroneously Received and Covered." 31 U.S.C. § 1322(b)(2). (JA:312-13.) The district court thus has authority to return appellants' funds.

The rejection of § 1322(b)(2) in *Vargas* and *Kinnison* was mistaken, as it was based on the premise that "a pardon does not make one's conviction or exaction 'erroneous' in the first place." *United States v. Vargas*, 789 F. Supp. 3d 60, 66 (D.D.C. 2025). But as *Ballenger* and *St. Cyr* explain, the focus should be on the vacatur of appellants' convictions, not the pardons. Vacatur, unlike a pardon, operates both prospectively and retrospectively. *Compare Hewitt*, 606 U.S. at 431, *with Knote*, 95 U.S. at 153. Looking backwards, "vacated court orders are void *ab initio*," and "the law acts as though the vacated order never occurred." *Hewitt*, 606 U.S. at 431. Because appellants are treated as having "no conviction[s] at all," even "as a historical fact," *id.* at 432 & n.8, appellants' conviction-dependent

penalties are properly described as "erroneously deposited," 31 U.S.C. 1322(b)(2).

**C.    Constitutional Avoidance Requires Construing These Statutes Broadly.**

Any doubts about the applicability of these statutes should favor refunds. "[W]hen statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). Such a scenario exists here. Appellants have presented "plausible interpretations" of these statutes, *id.* at 298, as authorizing refunds. Any contrary determination seriously imperils appellants' constitutional rights. A scheme that makes refunds impossible "fails basic due process measurement." *Nelson*, 581 U.S. at 139. Courts avoid constructions that destroy constitutionally-protected interests. *United States v. Clark*, 445 U.S. 23, 31 (1980).

This constitutional avoidance principle also affects how this Court should construe the Appropriations Clause. Courts "construe the constitution as to give effect to both provisions, as far as it is possible to reconcile them, and not to permit their seeming repugnancy to destroy each other." *Cohens v. Virginia*, 19 U.S. 264, 393 (1821). To be sure, the Appropriations Clause functions as "a bulwark of the Constitution's separation of powers among the three branches of the National Government." *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1347 (D.C. Cir. 2012). But its scope is not unbounded. Appropriations-based

restrictions may fall when "they violate a command of the Constitution" or "encroach on the powers reserved to another branch of the Federal Government." *Richmond*, 496 U.S. at 435 (White, J., concurring).  Because a no-appropriation finding diminishes appellants' due process rights, this Court should adopt appellants' constructions of these statutes to avoid conflict among these constitutional provisions.

### D.      Sovereign Immunity Does Not Bar Recovery.

Although there are limitations on the claims that may be raised in a suit against the federal government, sovereign immunity does not apply.  *See United States v. Navajo Nation*, 556 U.S. 287, 289 (2009) (describing sovereign immunity).  As an initial matter, the Little Tucker Act provides for consent to suit, making this jurisdictional bar to recovery inapplicable.  *First Va. Bank v. Randolph*, 110 F.3d 75, 77 (D.C. Cir. 1997).  Even if the Little Tucker Act is inapplicable, sovereign immunity would not bar refunds.  The doctrine, at its core, provides immunity from suit, not a prohibition on relief against the government in an action it chose to bring.  *See United States v. Sherwood*, 312 U.S. 584, 586 (1941).

Historically, a defendant, even without statutory authorization, could "recoup on a counterclaim an amount equal to the principal claim" despite sovereign immunity.  *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 511

(1940).  It was thought to "be a very rigid principle, to deny" a defendant "the right

of settling up" a claim, "and turn him round to an application to congress."  *United*

*States v. Ringgold*, 33 U.S. 150, 163 (1834).  "[N]o such necessity can exist, when

this right can properly be set up by way of defence, to a suit by the United States."

*Id.*  Cognizant of this exception, courts have found sovereign immunity

inapplicable when relief is being sought in "a component part of the original

criminal case."  *Ballenger*, 2025 WL 3467569, at *5 (quoting *State v. Danielson*,

809 P.2d 937, 941 (Alaska Ct. App. 1991)).  This is because refunds "aris[e] out of

some feature of the transaction upon which the plaintiff's action is grounded."

*Bull v. United States*, 295 U.S. 247, 262 (1935).

## **CONCLUSION**

For the foregoing reasons, appellants respectfully request that this Court reverse the district courts' orders denying relief and remand with instructions to order the refund of all criminal monetary penalties paid.

Respectfully submitted,

| | |
|---|---|
| _____/s/_____ | _____/s/_____ |
| Steven R. Kiersh | Katie Hurrelbrink |
| Law Offices of Steven R. Kiersh | Federal Defenders of San Deigo, Inc. |
| 5335 Wisconsin Avenue, NW | 225 Broadway |
| Suite 440 | Suite 900 |
| Washington, DC 20015 | San Diego, CA 92101 |
| (202) 347-0200 | (619) 234-8467 |
| _Counsel for John Earle Sullivan_ | _Counsel for Stacy Wade Hager_ |
| | |
| A.J. Kramer | Rene Valladares |
| Federal Public Defender | Federal Public Defender |
| | |
| _____/s/_____ | _____/s/_____ |
| Rosanna M. Taormina | Rohit Rajan |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| 625 Indiana Avenue, NW | 411 E. Bonneville Avenue, Suite 250 |
| Washington, DC 20004 | Las Vegas, NV 89101 |
| (202) 208-7500 | (702) 388-6261 |
| _Counsel for Bruno Cua_ | _Counsel for Derek Kinnison_ |

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing Brief for Appellants contains 7,489 words in Times New Roman 14 pt. font, which — when combined with the government's brief — does not exceed the word limit of Fed. R. App. P. 32(a)(7).

_____/s/_____
Rosanna M. Taormina
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on March 10, 2026.  I certify that all parties in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

_____/s/_____
Rosanna M. Taormina
Assistant Federal Public Defender
