ORAL ARGUMENT NOT YET SCHEDULED

CONSOLIDATED BRIEF FOR THE UNITED STATES IN
SUPPORT OF APPELLANTS

———————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

Nos. 25-3059, 25-3074, 25-3076, 25-3078 & 25-3093

———————————————

UNITED STATES OF AMERICA,　　　　　　　　　　　　Appellee,

　　　v.

JOHN EARLE SULLIVAN,
HECTOR VARGAS SANTOS,
STACY WADE HAGER,
BRUNO CUA,
DEREK KINNISON,　　　　　　　　　　　　　　　　Appellants.

———————————————

CONSOLIDATED APPEALS FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————————————

JEANINE FERRIS PIRRO
United States Attorney

CHRISELLEN R. KOLB
DANIEL J. LENERZ
KACIE WESTON
* NICHOLAS P. COLEMAN
D.C. Bar #460109
Assistant United States Attorneys

* Counsel for Oral Argument
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Nicholas.Coleman@usdoj.gov
(202) 252-6829

Cr. Nos. 21-47 (RDM),
21-78 (RCL), 21-107 (RDM),
21-381 (TSC), 21-392 (RCL)

2

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

## Parties and Amici

The parties to these consolidated appeals are appellants, John Earle Sullivan, Hector Vargas Santos, Stacy Wade Hager, Bruno Cua, and Derek Kinnison, and appellee, the United States of America. On November 25, 2025, this Court appointed Catherine E. Stetson, Esq., as amicus curiae to present arguments on behalf of the district court's orders in these consolidated cases.

## Rulings Under Review

These consolidated appeals are from orders entered by the district court denying return or reimbursement of funds seized from or paid by appellants in connection with convictions that were vacated on direct appeal, after appellants were pardoned in January 2025. Those orders were entered (1) in Sullivan's case, on May 20, 2025, by the Honorable Royce C. Lamberth, *see United States v. Sullivan*, 783 F.Supp.3d 385 (D.D.C. 2025); (2) in Vargas's case, on June 27, 2025, by the Honorable

Randolph D. Moss, *see United States v. Vargas Santos*, 789 F.Supp.3d 60 (D.D.C. 2025); (3) in Hager's case, by the Honorable Tanya S. Chutkan, *see United States v. Stacy Wade Hager*, No. 21-CR-381, 2025 WL 1886135 (D.D.C. July 3, 2025); (4) in Cua's case, by Judge Moss, *see United States v. Bruno Joseph Cua*, No. 21-CR-107, 2025 WL 4227205 (D.D.C. June 30, 2025), and on denial of reconsideration, *see United States v. Bruno Joseph Cua*, No. 21-CR-107, 2025 WL 4227205 (D.D.C. July 25, 2025); and (5) in Kinnison's case, by Judge Lamberth, *see United States v. Derek Kinnison*, No. 21-CR-392, 2025 WL 4227203 (D.D.C. Aug. 13, 2025). Appellants allege that the district court erred in denying the return or reimbursement of the funds, and the government agrees they should be repaid the money.

## Related Cases

Each appellant noted a direct appeal in this Court from his convictions in the district court. After appellants were pardoned in January 2025 while those appeals were pending, this Court ordered that the district court's judgments be vacated and remanded with instructions to dismiss the cases as moot. See Order, *United States v. John Earle Sullivan*, No. 24-3051 (D.C. Cir. Feb. 27, 2025); Order, *United States v.*

*Hector Emmanuel Vargas Santos*, No. 23-3059 (D.C. Cir. Feb. 4, 2025); Order, *United States v. Stacy Wade Hager*, No. 23-3130 (D.C. Cir. Feb. 3, 2025); Order, *United States v. Bruno Joseph Cua,* No. 23-3137 (D.C. Cir. Feb. 27, 2025); and Order, *United States v. Eric Scott Walker & Derek Kinnison*, Nos. 24-3046 & 24-3047 (D.C. Cir. Feb. 11, 2025).

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations are contained in the Addenda to the Brief for Appellant Vargas, and the remaining Appellants' Consolidated Brief.

# TABLE OF CONTENTS

STATEMENT OF THE CASE...............................................................1

SUMMARY OF ARGUMENT ...........................................................2

ARGUMENT .....................................................................................3

The District Court Erred in Prohibiting Return of Appellants' Funds. ...................................................................................3

    A.   The District Court Lacked Jurisdiction to Prohibit Repayment. ...........................................................................3

    B.   Even Assuming the District Court Had Jurisdiction, Its Orders Were Erroneous. ..................................................6

        1.   Standard of Review...........................................................6

        2.   Discussion.........................................................................7

CONCLUSION....................................................................................24

## Cases

*Abney v. United States*, 431 U.S. 651 (1977)................................12

*Beberman v. Blinken*, 61 F.4th 978 (D.C. Cir. 2023)...........................3, 6

*CFPB v. Community Fin. Servs. Assoc.*, 601 U.S. 416 (2024)..........14, 22

*Cortes v. NLRB*, 145 F.4th 57 (D.C. Cir. 2025).....................................3, 4

*Ex parte Garland*, 71 U.S. 333 (1866) .................................................12

*Fischer v. United States*, 603 U.S. 480 (2024)....................................10, 15

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013) ........................3

*Hewitt v. United States*, 606 U.S. 419 (2025)........................................7

*Hopkins v. Watson*, 108 F.4th 371 (5th Cir. 2024) ................................20

*In re North*, 62 F.3d 1434 (D.C. Cir. 1994).............................................15

*Kim v. United States*, 632 F.3d 713 (D.C. Cir. 2011)...............................3

\* *Knote v. United States*, 95 U.S. 149 (1877) ........................2, 9, 11, 15, 20

*Libretti v. United States*, 516 U.S. 29 (1995) ...........................................8

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ........................................16, 18

*Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47 (1971) .........4

*Muskrat v. United States*, 219 U.S. 346 (1911)........................................4

\* *Nelson v. Colorado*, 581 U.S. 128 (2017) ........................2, 7, 11, 16, 17, 18

*OPM v. Richmond*, 496 U.S. 414 (1990)...........................................9, 12, 15

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .................................................3

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*Republic Nat'l Bank of Miami v. United States,*
506 U.S. 80 (1992) ..................................................................... 19, 20

*Reynolds v. Alabama Dept. of Transp.*, No. 2:85cv665, 2008 WL 1701419
(M.D. Ala. April 10, 2008) .......................................................... 22

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998) ........................ 3

*Telink, Inc. v. United States*, 24 F.3d 42 (9th Cir. 1994) .......................... 8

*Timbs v. Indiana,* 586 U.S. 146 (2019) ............................................. 18

*United States v. $46,588.00 in U.S. Currency and $20.00 in Canadian Currency*, 103 F.3d 902 (3d Cir. 1996) ................................................... 5

*United States v. Estate of Parsons,* 367 F.3d 409
(5th Cir. 2004) (en banc) ........................................................... 11

*United States v. Hayes*, 385 F.3d 1226 (9th Cir. 2004) ......................... 8, 21

*United States v. Jackson,* 7 F.4th 261 (5th Cir. 2021) ............................. 8

*United States v. Lewis*, 478 F.2d 835 (5th Cir. 1973) ........................... 8, 21

*United States v. Libous*, 858 F.3d 64 (2d Cir. 2017) ............................. 11

*United States v. Logal*, 106 F.3d 1547 (11th Cir. 1997) .......................... 11

*United States v. Munoz-Flores*, 495 U.S. 385 (1990) ............................ 5, 14

\* *United States v. Schaffer*, 240 F.3d 35 (D.C. Cir. 2001) (en banc) ......... 10

*United States v. Sheth,* 924 F.3d 425 (7th Cir. 2019) .............................. 4

*United States v. Sitzmann,* 893 F.3d 811 (D.C. Cir. 2018) ....................... 7

*United States v. St. Cyr*, 804 F.Supp.3d 1 (D.D.C. 2025) ......................... 9

*United States v. Sun Growers of Cal.*, 212 F.3d 603
(D.C. Cir. 2000) ............................................................... 8, 14, 23

*United States v. Volpendesto,* 755 F.3d 448 (7th Cir. 2014) .................... 11

*United States v. Windsor*, 570 U.S. 744 (2013) ..........................................6

**Statutes**

U.S. Const. art. I, § 9, cl. 7 .......................................................12

18 U.S.C. § 1512(c) ............................................................. 10, 15

18 U.S.C. § 3556 ....................................................................11

28 U.S.C. § 524(c)(5) ................................................................4

28 U.S.C. § 2106 ...................................................................21

31 U.S.C. § 725q-1 .................................................................22

31 U.S.C. § 1322(b)(2) ......................................................3, 21, 23

34 U.S.C. § 20101 ...................................................................5

42 U.S.C. § 10601(a) ................................................................5

**Regulations**

28 C.F.R. § 8.5(a), (b) ...............................................................4

**Other Authorities**

*In re DOI – Refunds to Intermountain Power Project*, 61 Comp. Gen. 224, 1982 U.S. Comp. Gen. LEXIS 1547 (Jan. 28, 1982) ....................23

*In re Refund by SEC of Inv. Adviser Fees*, 55 Comp. Gen. 243, 1975 U.S. Comp. Gen. LEXIS 71 (Sept. 22, 1975)............................................22

U.S. Dep't of Justice OIG, Audit of the Assets Forfeiture Fund and the Seized Asset Deposit Fund (Sept. 30, 2024)..........................................5

Kate Stith, Congress' Power of the Purse, 97 Yale L.J. 1343 (1988) ....14

viii

# ISSUES PRESENTED

I. Whether the district court had jurisdiction to enter orders prohibiting the refund of money appellants forfeited or paid as fines, restitution, and assessments pursuant to convictions that were later vacated on appeal.

II. Whether, assuming the district court had jurisdiction, it erred in denying the refunds.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

Nos. 25-3059, 25-3074, 25-3076, 25-3078 & 25-3093

———————————————

UNITED STATES OF AMERICA,                                    Appellee,

v.

JOHN EARLE SULLIVAN,
HECTOR VARGAS SANTOS,
STACY WADE HAGER,
BRUNO CUA,
DEREK KINNISON,                                              Appellants.

———————————————

CONSOLIDATED APPEALS FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————————————

CONSOLIDATED BRIEF FOR THE UNITED STATES IN
SUPPORT OF APPELLANTS

———————————————

## STATEMENT OF THE CASE

The government incorporates by reference the factual description

of the district court proceedings in these cases contained in the brief for

appellant Vargas (at 3-9), and the other four appellants' consolidated brief (at 3-13).[1]

## SUMMARY OF ARGUMENT

The district court lacked jurisdiction to enter orders prohibiting the refunds. Because the parties were not adverse but agreed appellants were entitled to refunds, there was no "case or controversy" under Article III.

Even assuming the court had jurisdiction, it erred in denying the refunds. The framework of *Knote v. United States*, 95 U.S. 149 (1877), did not apply because appellants' claims to the funds were not simply based on their pardons, but on the vacatur of their convictions on appeal. Instead, the holding of *Nelson v. Colorado*, 581 U.S. 128 (2017), applied, namely that due process requires the return of funds taken on the basis of a conviction later vacated. Moreover, the pardons independently required repayment for convictions not yet final. The Appropriations

---

[1] We do not, however, necessarily adopt or endorse any legal arguments contained in those descriptions, nor do we necessarily agree with the characterization of the positions taken by the government in the district court proceedings.

Clause did not bar the refunds, and even assuming separate statutory authorization was needed, 31 U.S.C. § 1332(b)(2), which provides "necessary amounts" for refunds of money "erroneously deposited" into the Treasury, permitted repayment.

## ARGUMENT

## The District Court Erred in Prohibiting Return of Appellants' Funds.

### A. The District Court Lacked Jurisdiction to Prohibit Repayment.

Whether the district court had jurisdiction is a "threshold question," *see Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)), and under Article III of the Constitution, federal courts are limited to adjudicating cases or controversies. *See O'Shea v. Littleton*, 414 U.S. 488, 493 (1974). "That requirement ensures that courts stick to their 'constitutionally limited role of adjudicating actual and concrete disputes' and do not issue free-roving advisory opinions." *Beberman v. Blinken*, 61 F.3d 978, 981 (D.C. Cir. 2023) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013)). A case or controversy, in turn, requires adverseness between the parties. *See Cortes v. NLRB*, 145 F.4th 57, 61

3

(D.C. Cir. 2025); *Muskrat v. United States*, 219 U.S. 346, 361 (1911). There is "no case or controversy" when "both litigants desire precisely the same result[.]" *Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47, 48 (1971).

Here, the government and appellants desired the same result: the return of money that appellants forfeited or paid pursuant to pardoned and since-vacated convictions. "In other words, [appellants] have not sought any relief from th[e] court that the government has refused to provide." *See Cortes*, 145 F.4th at 62. There was accordingly no adverseness between the parties, and hence no case or controversy to resolve. In Sullivan's case, the court accordingly should not have prohibited the return of the $62,813,76[2] being held in the Seized Asset Deposit Fund (SADF) pending the outcome of the appeal;[3] in fact, it

---

[2] Although the total forfeiture against Sullivan was for $90,875, only $62,813.76 actually was seized and held by the government (see JA:42,51-52,55).

[3] Regulations and guidelines require that seized currency be deposited into the SADF and held there until resolution of the forfeiture proceeding. *See* 28 C.F.R. § 8.5(a), (b); Justice Manual § 9-111.600; *see also, e.g., United States v. Sheth*, 924 F.3d 425, 431 n.5 (7th Cir. 2019). The SADF was created pursuant to 28 U.S.C. § 524(c)(5) to streamline the retention of seized funds pending forfeiture; before 1987, law

(continued . . . )

should not have issued any order at all. It should simply have stood aside and allowed the government to return the money—as the government said it was prepared to do in its response to Sullivan's motion.

Similarly, given that the district court clerk had already transferred the other appellants' fines and assessment payments to the Crime Victims Restitution Fund (CVRF),[4] and their restitution payments to the Architect of the Capitol (AOC) (see Vargas Appendix (VA) 37-38),[5] but the government was willing to return that money, either directly or via the clerk (see VA:38-40), at most the court should have indicated that nothing inhibited the refund and/or the clerk was free to facilitate the

---

enforcement entities deposited seized money in commercial bank accounts. *See United States v. $46,588.00 in U.S. Currency and $20.00 in Canadian Currency*, 103 F.3d 902, 904 n.5 (3d Cir. 1996) (citing Attorney General Policy Directive No. 87-1 (March 13, 1987)). "Funds in the SADF are not Government property and may not be used to cover any costs of the [Department's Asset Forfeiture Program]." U.S. Dep't of Justice OIG, Audit of the Assets Forfeiture Fund and the Seized Asset Deposit Fund, at 5 (Sept. 30, 2024).

[4] Also called the Crime Victims Fund (CVF), it was established by Congress in 1984 "as a federal source of funds for programs that compensate and assist crime victims." *See United States v. Munoz-Flores*, 495 U.S. 385, 398 (1990) (citing 42 U.S.C. § 10601(a) (1990), since recodified at 34 U.S.C. § 20101).

[5] References to Vargas's appendix are to the PDF page numbers.

transfer.[6] The court should not have entered orders instead holding that appellants lacked any entitlement to the money and that a Congressional appropriation was necessary–a result sought by neither party, and precisely the kind of "free-roving advisory opinions" courts should not issue. *See Bebermen*, 61 F.4th at 981.[7]

### B. Even Assuming the District Court Had Jurisdiction, Its Orders Were Erroneous.

#### 1. Standard of Review

This Court does not appear to have specified the standard of review for decisions regarding reimbursement of funds paid pursuant to a since-

---

[6] The district court clerk's refusal to make the refunds (see VA:36; Joint Appendix (JA) 144) may, as a practical matter, have required the court's administrative intervention–not to establish appellants' right to the money, but to clarify that the clerk should not refuse to cooperate with the refund. Alternatively, as this Court's clerk suggested to the government, if the district court could not order the refund, it could have indicated that the government was free to distribute the money through other "available funds identified by the government" (VA:38-39).

[7] *United States v. Windsor*, 570 U.S. 744, 758 (2013), is not to the contrary; in that case, the Court found adverseness despite the fact that both parties agreed a tax statute was unconstitutional, because the government refused to refund the tax until the statute was struck down. *Id.* Here, by contrast, the government was willing to repay appellants in the absence of court action because the condition precedent to repayment (pardon and vacatur) had already occurred.

vacated conviction. However, because the district court based its denials on its view of the legal effect of the pardons and the Appropriations Clause, these cases present questions of law reviewed de novo. *See United States v. Sitzmann*, 893 F.3d 811, 821 (D.C. Cir. 2018).

## 2. Discussion

Assuming the district court had jurisdiction, it should have granted the refunds. Because the judgments against appellants were vacated, the forfeiture, fines, restitution, and/or assessments imposed by those judgments necessarily were vacated as well. As the Supreme Court has explained, the "presumption is that vacated court orders are void ab initio... By operation of legal fiction, the law acts as though the vacated order never occurred." *Hewitt v. United States*, 606 U.S. 419, 431 (2025). Thus, "[a] criminal defendant whose judgment of conviction has been vacated... is to be treated going forward as though he were never convicted... In other words, that vacated conviction is subsequently treated as no conviction at all." *Id.* at 431-32. And the Court has made clear that the government is "obliged to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, [a] conviction" that has been "invalidated by a reviewing court[.]" *Nelson,*

581 U.S. at 130; *see also Telink, Inc. v. United States*, 24 F.3d 42, 46-47 (9th Cir. 1994) ("the recovery of wrongly paid fines is 'incident to the vacating and setting aside' of the wrongful conviction"; defendant accordingly not required to pursue separate civil action to recover money) (quoting *United States v. Lewis*, 478 F.2d 835, 836 (5th Cir. 1973)); *see also United States v. Hayes*, 385 F.3d 1226, 1229 (9th Cir. 2004) (the "same logic applies to special assessments"); *United States v. Jackson*, 7 F.4th 261, 264 n.1 (5th Cir. 2021) (vacating forfeiture order where defendant's conviction was vacated, because "criminal forfeiture is an aspect of punishment imposed following conviction of a substantive criminal offense") (citing *Libretti v. United States*, 516 U.S. 29, 39 (1995)); *cf. United States v. Sun Growers of Cal.*, 212 F.3d 603, 604 (D.C. Cir. 2000) (noting that fines and assessments paid into CVF were ordered by district court to be refunded after defendant's conviction was reversed on appeal).[8]

---

[8] Because appellants' convictions were vacated before they were final on direct appeal, this Court need not address the entitlement vel non to refunds where post-appeal, final convictions are vacated during collateral proceedings.

The district court's refusal to do so rested on three errors. First, the court believed that the analysis of *Knote*, 95 U.S. 149, applied because appellants, like Knote, were pardoned (VA:46-47; Joint Appendix (JA) 68,157-59,216,316). In *Knote*, a supporter of the Confederacy had had his property confiscated under a Civil War confiscation act in connection with treason and rebellion accusations against him. *See Knote*, 95 U.S. at 149, 152. A federal court had ordered the sale of the property, with the funds paid into the Treasury. *Id.* Knote was subsequently pardoned and sought a refund, but the Supreme Court held that he was not entitled by virtue of the pardon to have his money returned unless it was "expressly authorized by an act of Congress." *Id.* at 149-50, 154; *see also OPM v. Richmond*, 496 U.S. 414, 425-26 (1990) ("the pardon power cannot override the command of the Appropriations Clause").

As the district court has explained in a case with similar facts as here, however, those judges who relied on *Knote* in appellants' cases "incorrectly assume[d] that it [wa]s the pardon that [wa]s doing the work here." *See United States v. St. Cyr*, 804 F.Supp.3d 1, 8 (D.D.C. 2025). Unlike in *Knote*, appellants' requests for reimbursement were based on the *vacatur* of their convictions, not simply the pardon itself. *Id.* at 7-8.

This Court has held that, although "a pardon does not, standing alone, render [a defendant] innocent[,]" a pardon issued while a conviction is still on direct appeal means that "[f]inality was never reached on the legal question of [the defendant's] guilt[,]" thus "rendering the case moot." *United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001) (en banc). And, "[w]hen a case becomes moot on appeal… this [C]ourt generally vacates the [d]istrict [c]ourt's judgment… and remands to the [d]istrict [c]ourt with direction to dismiss." *Id.* That is precisely what happened in these cases (see VA:27; JA:48,137,202,288).

The district court's belief that appellants' convictions were not void "ab initio" (VA:47), or "invalidated" (JA:317) because the vacaturs were based on pardons as opposed to some other legal ground cannot be reconciled with *Schaffer*. Where a conviction is vacated as moot on appeal, both the guilty verdict and the defendant's claim of innocence are "lost to the same mootness[.]" *Schaffer*, 240 F.3d at 38. It was accordingly immaterial whether, e.g., Cua's conviction under 18 U.S.C. § 1512(c) was vacated because of a pardon or because its statutory basis was subsequently invalidated in *Fischer v. United States*, 603 U.S. 480 (2024) (see JA:168); as *Nelson* noted, "'reversal is reversal,' regardless of the

reason, '[a]nd an invalid conviction is no conviction at all.'" *See* 581 U.S. at 136 n.10 (citation omitted). Or, as the Second Circuit explained in holding that the government had to refund fines paid under a conviction that was vacated due to the defendant's death during appeal,

> Since Libous "stands as if he never had been indicted or convicted," [*United States v.*] *Logal*, 106 F.3d [1547,] 1552 [(11th Cir. 1997)], "at least in the eyes of the criminal court... [he] is no longer a wrongdoer," [*United States v.*] *Estate of Parsons*, 367 F.3d [409,] 416 [(5th Cir. 2004) (en banc)]. There is no legal basis on which the state can retain a fine exacted from Libous as punishment for an offense he is now presumed not to have committed. *Cf.* [*United States v.*] *Volpendesto*, 755 F.3d [448,] 454 [(7th Cir. 2014)] (abating criminal restitution order where defendant died pending appeal because "[w]ithout a final criminal conviction, there can be no order of restitution under 18 U.S.C. § 3556"). Once Libous's conviction is vacated, the state is as much entitled to retain the fine as if Libous had been acquitted.

*United States v. Libous*, 858 F.3d 64, 67 (2d Cir. 2017).[9]

Second, although the Court need not reach the issue given the vacaturs, the pardons independently required returning money in the

---

[9] Judges Moss incorrectly opined (VA:47) that *Knote* must apply here because Knote was never convicted. The opposite is true: because Knote's property was not seized pursuant to conviction but to a Civil War confiscation act, *see* 95 U.S. at 152, *only* the pardon itself could have entitled Knote to its return. The Court's determination that Knote's pardon did not grant such entitlement, *id.* at 154, accordingly had no bearing on cases like these, where appellants' money was taken pursuant to convictions later vacated.

possession of the government pursuant to convictions not yet final. A full pardon "releases the punishment" for a criminal offense and, "if granted after conviction," "removes the penalties and disabilities" already imposed, *Ex parte Garland*, 71 U.S. 333, 380 (1866), which should include fines or criminal forfeitures in the possession of the government. *Knote* does not hold otherwise; it did not involve a conviction-based fine and was decided before direct appellate review of criminal convictions was authorized by statute in 1889. *See Abney v. United States*, 431 U.S. 651, 656 n.3 (1977) (describing Congressional action establishing right of appeal). *Knote* thus did not address the effect of pardons on money in the possession of the government under non-final convictions.

Third, the district court erroneously believed that the Appropriations Clause prohibited reimbursement (VA:43,48-49; JA:73-77,162,216,316-18). That Clause provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. Under the Clause, "[m]oney may be paid out only through an appropriation made by law; in other words, the payment of money from the Treasury must be authorized by a statute." *Richmond*, 496 U.S. at 424. The "fundamental and comprehensive

purpose" of the Clause "is to assure that *public* funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants." *Id.* at 427-28 (emphasis added).

At the outset, we note that it is unclear that the refunds here were "drawn from the Treasury" within the meaning of the Clause. First, the SADF in which Sullivan's money was held, although maintained by the Treasury, is essentially an escrow account used to store funds until a final decision on forfeiture is made (see JA:62).[10] Under Judge Lamberth's approach, the Treasury could not maintain escrow accounts, because "[o]nce money is in the Treasury, it can only be withdrawn pursuant to a Congressional appropriation" (JA:75). This Court should not endorse that formalistic and impractical view. Similarly, although appellants' other funds appear to have been transferred by the court clerk to governmental entities (the CVRF/CVF and AOC), it does not follow that returning them when the government's claim to them is

---

[10] See supra at 4 n.3.

13

extinguished is covered by the Appropriations Clause. See Kate Stith, Congress' Power of the Purse, 97 Yale L.J. 1343, 1358 & n.67 (1988) (opining that Appropriations Clause "encompass[es] only monies which, pursuant to positive law, belong to the United States," and thus would not apply to, e.g., "overpayment of federal income taxes" or "funds held… in escrow or in other trust arrangements in the course of litigation"). Unsurprisingly, although the transfer of fines and assessments to the CVF even while a conviction is on appeal is required by statute, it also appears that historically such money has been refunded if an appeal is successful. *See Sun Growers*, 212 F.3d at 605; *cf. United States v. Munoz-Flores*, 495 U.S. 385, 398-99 (1990) (declining to treat assessments paid into CVF as taxes for Origination Clause purposes because little, if any, of the money is ever transferred into Treasury's general fund); *CFPB v. Community Fin. Servs. Assoc.*, 601 U.S. 416, 425 (2024) ("Whatever the scope of the term 'Treasury' in the Appropriations Clause, money otherwise destined for the general fund of the Treasury qualifies."). The same should be true of restitution paid to a government entity like the AOC, where the conviction it was based on is vacated.

In any event, the district court's invocation of the Appropriations Clause in these cases appears primarily to have been an outgrowth of its determination that the pardons did not "entitle" appellants to reimbursement (see VA:47-48; JA:68-69,157-59,216,316-18). In other words, the court viewed its decisions as resting on *Knote*'s holding that the pardon power does not permit unauthorized payments from the Treasury, *see Knote*, 95 U.S. at 154; *see also Richmond*, 496 U.S. at 426, rather than the lack of a Congressional appropriation for refunds of criminal fines or fees per se.[11] As explained supra, however, appellants' entitlement arises from the vacatur of their convictions.[12]

---

[11] Indeed, that belief appears to explain Judge Moss's suggestion that Cua could have obtained a refund if his § 1512(c) conviction had been vacated by virtue of the decision in *Fischer*, 603 U.S. 480, instead of the pardon (JA:168-69).

[12] *In re North*, 62 F.3d 1434 (D.C. Cir. 1994), does not weigh against these refunds. In *North*, the defendant was pardoned after a guilty verdict but before sentence. *Id.* at 1435. He then sought reimbursement of attorneys' fees under a statute permitting it for persons who were investigated by the Independent Counsel but never indicted. *Id.* at 1434. This Court disagreed that the pardon "expunge[d]" the indictment so as to entitle the defendant to reimbursement under the statute. *Id.* at 1437. *North* (like *Knote*) addressed the effect of a pardon itself, not vacatur of a conviction, and it did not concern funds taken from a defendant.

Judge Lamberth further suggested (JA:71-77), however, that even if Sullivan were entitled to the refund, it could not be paid absent express statutory authorization. Because Judge Lamberth did not believe the government had identified such a statute, whatever right Sullivan had to the money lacked an available "remedy" (JA:73-74).

This approach, under which a defendant whose convictions are vacated for any reason–even actual innocence–cannot obtain a refund of already-paid fines absent Congressional action, cannot be squared with *Nelson*. *Nelson* struck down a state statute requiring defendants whose convictions had been vacated to prove their innocence via clear and convincing evidence in a separate civil proceeding before they could obtain a refund of conviction-based assessments. 581 U.S. at 130-31. Applying the due-process test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which "evaluates (A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake[,]" *Nelson* held that defendants' interest in the money was "obvious," whereas the state "ha[d] zero claim of right[,]" because "once those convictions were erased, the presumption of [the defendants'] innocence was restored[,]" and the state could "not

16

retain funds taken from [defendants] solely because of their now-invalidated convictions[.]" 581 U.S. at 134-36, 139. The refund procedure, moreover, created an unacceptable "risk of erroneous deprivation of defendants' interest in return of their funds," because the statute allowed no recourse at all for former misdemeanants, and former felons were "saddled" with a burden of proof. *Id.* at 137. Instead, "[t]o comport with due process, a State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." *Id.* at 139.[13]

Judge Lamberth sought to distinguish *Nelson* on two grounds, but neither withstands scrutiny. First, he opined (JA:71-72) that because *Nelson* was based on the Fourteenth Amendment's Due Process Clause, its holding applied only to states and not to money in the federal Treasury. However, although *Nelson* invalidated Colorado's procedure under the Fourteenth Amendment, *see* 581 U.S. at 130, that is because

---

[13] The government agrees that the restitution ordered in these cases is fully refundable because it was paid to a government entity (the AOC). We do not address, and this Court need not decide, the more difficult question whether restitution already paid to a private victim would be returnable. *Cf. Nelson*, 581 U.S. at 146-47 (Alito, J., concurring).

federal constitutional rights are applicable to the states only via that Amendment. *Cf. Timbs v. Indiana*, 586 U.S. 146, 150 (2019). In fact, *Nelson* expressly applied, *see* 581 U.S. at 134, the test of *Mathews*, which analyzed a *federal* administrative procedure under the Fifth Amendment's Due Process Clause. *See* 424 U.S. at 323. Unsurprisingly, nothing in *Nelson*'s analysis suggested that the federal government may simply keep money taken pursuant to a vacated conviction. Federal defendants also have their presumption of innocence restored once their convictions are "erased," 581 U.S. at 135; the federal government has no greater "interest" or "claim of right" than states in such funds, *id.* at 139; and there is not merely a "risk[,]" but a certainty "of erroneous deprivation of property" where there is no statutory remedy at all. *Id.* at 137-38.[14]

Second, Judge Lamberth held (JA:75) that a majority of the Supreme Court had adopted his rigid view of the Appropriations Clause

---

[14] Judge Lamberth's suggestion (JA:72) that *Nelson* should not apply because Congress has not affirmatively "enact[ed] any procedural obstacles" to reimbursement should be rejected. As noted supra, *Nelson* faulted Colorado for failing to establish any refund procedure for former misdemeanor defendants. 581 U.S. at 137.

in *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80 (1992) ("*RNB*"). But *RNB* should not be read so broadly. In *RNB*, the government sought forfeiture of a home; the marshal seized it, and a bank filed a claim asserting a lien in the property. *Id.* at 82. The parties agreed to sell the property, with the proceeds held by the marshal pending disposition of the bank's claim. *Id.* at 82-83. After the district court denied that claim, the bank appealed but did not seek to stay the judgment, and the marshal transferred the money to the Treasury. *Id.* at 83. The Eleventh Circuit held that the removal of the money terminated the district court's in rem jurisdiction. *Id.* at 83-84.

The Court reversed. *RNB*, 506 U.S. at 93 (Blackmun, J.), 93-96 (Rehnquist, C.J.). Justice Blackmun, writing for the Court, held that it was unnecessary for the res to be physically present to exercise jurisdiction. *Id.* at 84-89. He separately opined that the Appropriations Clause—which the government asserted as an additional bar to the bank's claim—did not require a statute expressly permitting every transfer of funds from the Treasury, as this would result in the "absurdity" of federal agents being permitted to steal money so long as they could quickly deposit it in the Treasury. *Id.* at 89-90. He instead opined that disputed

19

funds should not be treated as "public" money even if held in the Treasury. *Id.* at 92. As Judge Lamberth correctly noted (JA:75-76), no other Justice joined that part of Blackmun's opinion, and Chief Justice Rehnquist separately opined for the Court that, under *Knote*, any money received by the Treasury should be treated as public money subject to the Appropriations Clause. *RNB*, 506 U.S. at 93-94 (citing *Knote*, 95 U.S. at 154). The Chief Justice instead held that there existed statutory authorization for payment to the bank should its appeal succeed. *Id.* at 95-96.

Notably, however, *RNB*, like *Knote* itself, did not involve a due-process claim at all, much less address reimbursement of defendants whose convictions had been vacated. *Nelson*, by contrast, subsequently and specifically held that due process requires reimbursement of such defendants, at least with funds held by the government. As the decision more precisely on-point, its analysis would control. And to the extent that the Appropriations and Due Process Clauses conflict here, the latter, as the later-adopted amendment, would control. *See, e.g., Hopkins v. Watson*, 108 F.4th 371, 379 (5th Cir. 2024).

It is accordingly unclear that the district court needed any specific grant of statutory authority to order return of the funds to effectuate due process, beyond its general power to vacate the convictions pursuant to this Court's order. *See Lewis*, 478 F.2d at 836 ("Since the district court was empowered to set aside the conviction, it could also correct the unlawful result of the conviction and require the repayment of the money collected as fines... Just as the imposition of a fine is an incident of a criminal conviction, so is the direction for repayment an incident to the vacating and setting aside of the conviction."); *cf.* 28 U.S.C. § 2106 (appellate court may, inter alia, "vacate, set aside or reverse any judgment... and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances"); *Hayes*, 385 F.3d at 1229 (defendant may file Rule 41(g) motion to seek return of funds after wrongful conviction).

To the extent that additional statutory authority was needed, however, as the government suggested (VA:39-40; JA:312-13), 31 U.S.C. § 1322(b)(2)'s authorization for "[r]efunds of [m]oneys [e]rroneously [r]eceived" and "collections erroneously deposited" in the Treasury "that

are not properly chargeable to another appropriation" should permit return of appellants' money. *Cf. CFPB*, 601 U.S. at 426-27 (explaining that, under the original meaning of the Appropriations Clause, "an identified source [of money] and purpose are all that is required for a valid appropriation"). As one district court has explained, Congress appropriates money under § 1322(b)(2) because "from time to time, the United State government receives funds to which it is not entitled[.]" *Reynolds v. Alabama Dept. of Transp.*, No. 2:85cv665, 2008 WL 1701419, *3 (M.D. Ala. April 10, 2008) (noting that although there is "scant legal authority interpreting" § 1322(b)(2), its plain language "is sufficiently broad to encompass a myriad of circumstances"). The statute accordingly should permit the return of funds such as these, where the government's claim to them was never final and has since been extinguished. *See, e.g., In re Refund by SEC of Inv. Adviser Fees*, 55 Comp. Gen. 243, 1975 U.S. Comp. Gen. LEXIS 71, *3 (Sept. 22, 1975) (SEC could pay back invalidated fees from account created under 31 U.S.C. § 725q-1, the

predecessor to § 1322(b)(2)).[15] The district court accordingly erred in holding that the refunds were unauthorized.[16]

[15] Notably, after the government proposed the account referenced in § 1322(b)(2), Treasury account 20X1807, as an appropriate source of the refunds (VA:38-40; JA:312-13), the district court rejected § 1322(b)(2) as authorization for repayment largely based on its belief that appellants were not actually entitled to the money under *Knote* (see VA:47-49; JA:317-18). To the extent that the court also rejected the applicability of § 1322(b)(2) because the deposit of appellants' money was not "erroneous" at the time it was seized or paid (see VA:48-49; JA:317-18), the above-referenced Comptroller General opinion indicates that "erroneously" deposited funds include those collected but later determined to be legally unsupported. *See also, e.g., In re DOI – Refunds to Intermountain Power Project*, 61 Comp. Gen. 224, 1982 U.S. Comp. Gen. LEXIS 1547, *2 (Jan. 28, 1982) (where Interior Department collected fees later held invalid by district court, any refunds which Congress had not specifically authorized should be paid from the fund created by statutory predecessor to § 1322(b)(2)).

[16] It is unclear whether the clerk has refused to refund fines or assessments after a conviction was vacated on appeal for reasons other than a pardon (see VA:34-36). However, in at least one case before this Court the district court ordered the return of fines and assessments paid into the CVF after a conviction was reversed on appeal; that refund was not questioned in the subsequent appeal, only whether the defendant was additionally entitled to interest. *See Sun Growers*, 212 F.3d at 604.

# CONCLUSION

WHEREFORE, the government respectfully submits that the judgments of the District Court should be reversed.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

CHRISELLEN R. KOLB
DANIEL J. LENERZ
KACIE WESTON
Assistant United States Attorneys

_____/s/_____

NICHOLAS P. COLEMAN
D.C. Bar #460109
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Nicholas.Coleman@usdoj.gov
(202) 252-6829

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this brief contains 4,763 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/

NICHOLAS P. COLEMAN
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Consolidated Brief for the United States to be served by electronic means, through the Court's CM/ECF system, upon counsel for (1) appellant John Sullivan, Steven R. Kiersh, Esq.; (2) appellant Hector Emmanuel Vargas Santos, Nandan Kenkeremath, Esq.; (3) appellant Bruna J. Cua, Rosanna M. Taormina, Esq., Assistant Federal Public Defender; (4) appellant Stacy W. Hager, Katherine Marie Hurrelbrink, Esq., Federal Defenders of San Diego, Inc.; (5) appellant Derek Kinnison, Rohit Rajan, Esq., Federal Public Defender, Las Vegas, Nevada; and (6) amicus curiae Catherine E. Stetson, Esq., University of Virginia Law School, on this 10th day of March, 2026.

/s/

NICHOLAS P. COLEMAN
Assistant United States Attorney
