ORAL ARGUMENT NOT YET SCHEDULED

CONSOLIDATED REPLY BRIEF FOR THE UNITED STATES IN
SUPPORT OF APPELLANTS

————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

Nos. 25-3059, 25-3074, 25-3076, 25-3078 & 25-3093

————————————

UNITED STATES OF AMERICA,                                    Appellee,
         v.

JOHN EARLE SULLIVAN,
HECTOR VARGAS SANTOS,
STACY WADE HAGER,
BRUNO CUA,
DEREK KINNISON,                                              Appellants.

————————————

CONSOLIDATED APPEALS FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

————————————

JEANINE FERRIS PIRRO
United States Attorney

CHRISELLEN R. KOLB
DANIEL J. LENERZ
KACIE WESTON
* NICHOLAS P. COLEMAN
D.C. Bar #460109
Assistant United States Attorneys
* Counsel for Oral Argument
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Nicholas.Coleman@usdoj.gov
(202) 252-6829

Cr. Nos. 21-47 (RDM),
21-78 (RCL), 21-107 (RDM),
21-381 (TSC), 21-392 (RCL)

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT.................................................... 1

ARGUMENT ................................................................. 3

The District Court Erred in Prohibiting Return of Appellants' Funds. ...................................................................3

   A.  The Court Lacked Jurisdiction to Prohibit Repayment. ...................................................................3

   B.  The Orders Were Erroneous on the Merits.........................5

      1.  Appellants Are Entitled to Repayment. ........................5

      2.  The Appropriations Clause Does Not Bar Repayment. ...............................................................9

CONCLUSION .............................................................12

# TABLE OF AUTHORITIES*

**Cases**

*Clark v. Sweeney*, 607 U.S. 7 (2025) ........................................................4

\* *Cortes v. NLRB*, 145 F.4th 57 (D.C. Cir. 2025)........................................4

\* *Knote v. United States*, 95 U.S. 149 (1877) .........................................2, 5

*Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47 (1971) ..........4

\* *Nelson v. Colorado*, 581 U.S. 128 (2017).........................................8, 9, 10

*NLRB v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395
    (4th Cir. 2022) .....................................................................................3

*Osborn v. United States*, 91 U.S. 474 (1875)............................................5

*United States v. Libous*, 858 F.3d 64 (2d Cir. 2017) ................................6

*United States v. McNeil*, 911 F.2d 768 (D.C. Cir. 1990) ..........................7

*United States v. Schaffer*, 121 F.Supp.2d 29 (D.D.C. 2000) ....................8

\* *United States v. Schaffer*, 240 F.3d 35 (D.C. Cir. 2001) ............. 7, 8, 9, 11

*United States v. Windsor*, 570 U.S. 744 (2013)........................................3

---

\* Authorities upon which we chiefly rely are marked with asterisks.

**Other References**

28 U.S.C. § 2465 ................................................................................11

31 U.S.C. § 1322(b)(2)................................................................. 10, 11

Black's Law Dictionary (6th ed. 1990) ....................................................7

Bryan A. Garner, *Garner's Dictionary of Legal Usage*
(3d ed. 2011).................................................................................7

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————————

Nos. 25-3059, 25-3074, 25-3076, 25-3078 & 25-3093

————————————————

UNITED STATES OF AMERICA,                                    Appellee,

v.

JOHN EARLE SULLIVAN,
HECTOR VARGAS SANTOS,
STACY WADE HAGER,
BRUNO CUA,
DEREK KINNISON,                                               Appellants.

————————————————

CONSOLIDATED APPEALS FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

————————————————

CONSOLIDATED REPLY BRIEF FOR THE UNITED STATES
IN SUPPORT OF APPELLANTS

————————————————

## SUMMARY OF ARGUMENT

The district court lacked jurisdiction to enter orders prohibiting repayment. Contrary to amicus's argument, the mere fact that money would change hands is not enough to establish "adverseness," because

the government is not refusing to make the refunds in the absence of a court order.

Amicus also fails to show that the orders were meritorious. Contrary to amicus's argument, *Knote v. United States*, 95 U.S. 149 (1877), does not hold that pardons cannot authorize return of money exacted as direct punishment for a criminal conviction. And even if it did, the vacatur of appellants' convictions entitled them to refunds. Amicus's contrary argument, that the vacaturs could not create that entitlement because they were not true "reversals" of the convictions is unsupported, as is amicus's belief that, to obtain refunds, appellants had to object to the dismissal of their appeals as moot. Moreover, amicus's argument that appellants needed a Congressional appropriation to obtain repayment turns out, on closer inspection, to be predicated on amicus's erroneous belief that appellants lacked a right to repayment in the first place.

2

## ARGUMENT

### The District Court Erred in Prohibiting Return of Appellants' Funds.

#### A. The Court Lacked Jurisdiction to Prohibit Repayment.

Amicus argues (Br.11-12,16-18) that despite the agreement between the parties as to the proper result, they have adverse interests because returning appellants' money would cause a "concrete injury to the federal fisc." The cases amicus cites, however, do not hold that adverseness exists whenever money will change hands. Rather, they recognize adverseness when one party agrees the other should receive relief but refuses to act in the absence of a court order. *See United States v. Windsor*, 570 U.S. 744, 758 (2013) ("The judgment orders the United States to pay money that it would not disburse but for the court's order... Windsor's ongoing claim for funds that the United States refuses to pay thus establishes a controversy sufficient for Article III jurisdiction."). Thus, although the parties need not "mak[e] adverse arguments" to establish jurisdiction, *see NLRB v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 404 (4th Cir. 2022) (citing *Windsor*, 570 U.S. at 759-60), adverseness remains lacking unless the sought-after

3

judgment "require[s] a party to act" in a way it otherwise would not. *See id.* at 404 (no adverseness where company had already agreed to NLRB's demands); *Cortes v. NLRB*, 145 F.4th 57, 62 (D.C. Cir. 2025) (no adverseness where NLRB agreed with petitioners that its members' removal protections were unconstitutional).

Here, the government would not refuse to return any appellant's money in the absence of the challenged court orders. Rather, the district court has interposed itself between appellants and their money by *prohibiting* the government from returning Sullivan's money (as it said it would) or outright denying refunds of the other appellants' fines and fees (when it appears that the clerk's office simply could have facilitated the refunds from the government). Given that, "[i]n our adversarial system of adjudication... courts 'call balls and strikes'; they don't get a turn at bat[,]" *cf. Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (citation omitted), it follows that courts cannot create adverseness by erecting legal barriers on their own initiative. These orders accordingly should be vacated for lack of jurisdiction. *See Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47, 48 (1971).

4

### B. The Orders Were Erroneous on the Merits.

#### 1. Appellants Are Entitled to Repayment.

In arguing that appellants lack any right to refunds, amicus asserts, inter alia (Br.13-14,18-28), that neither the pardons nor the vacaturs of appellants' convictions created that right. These arguments should be rejected.

First, as to the pardons, amicus overstates (Br.26-27) the holding of *Knote*, 95 U.S. 149. *Knote* concerned property seized under a Civil War confiscation act; it did not address the return of fines, assessments, or forfeitures imposed as direct *punishment* for a pardoned criminal *conviction. See Knote*, 95 U.S. at 152. Moreover, *Knote*'s heavy reliance on the fact that the right to the seized proceeds had "vested" in the government before the pardon, *see id.* at 155-56, strongly suggests that the Court would have taken a different view had the money passed to the government on the basis of a conviction not yet final on appeal. Indeed, in *Osborn v. United States*, 91 U.S. 474 (1875), cited by amicus (Br.26), the Court held that proceeds from the sale of property seized under a Civil War confiscation act could be returned by the government as a

5

result of a pardon; only where the right to seized property had "vested" in a third party was return precluded. *Id.* at 478 (where pardon "removes the ground of the forfeiture upon which the decree rests… the source of [the government's] title is then gone").

Second, even if the pardons did not compel refunds, vacatur of appellants' convictions did. Amicus erroneously labels (Br.18-19) this argument "circular" because amicus starts in the wrong place. Amicus assumes (Br.19-21) that because (per *Knote*) pardons do not confer a right to reimbursement, appellants had no right to the money "in the first place," and thus vacaturs arising from pardons also cannot create that right. But amicus fails to acknowledge that the money was appellants' "in the first place," and the *government's* superseding claim was predicated on appellants' convictions. When those convictions were vacated, the government's claim to the money disappeared and appellants' original right to it was restored. *United States v. Libous*, 858 F.3d 64, 67 (2d Cir. 2017) ("Once Libous's conviction is vacated, the state is as much entitled to retain the fine as if Libous had been acquitted.").

Amicus's contrary assertion (Br.19-21) that the monetary punishments survived dismissal of these cases rests on the belief that

vacatur is different from "reversal" of a conviction, with only the latter implying innocence. The terms are essentially synonyms in legal usage, however. See Black's Law Dictionary at 1319 (6th ed. 1990) ("[r]everse" means "[t]o overthrow, vacate, set aside, make void, annul, repeal, or revoke"); *id.* at 1548 ("[v]acate" means "[t]o annul; to set aside; to cancel or rescind"); cf. Bryan A. Garner, *Garner's Dictionary of Legal Usage*, at 497 (3d ed. 2011) (noting that courts' "[p]ractices vary" in using "vacate" and "reverse"). Moreover, even "reversals" may be based on grounds having nothing to do with innocence. *See, e.g., United States v. McNeil*, 911 F.2d 768, 775 (D.C. Cir. 1990) ("revers[ing]" convictions for violation of Speedy Trial Act).

In any event, amicus's position–that vacatur's effect on collected financial penalties depends on whether the defendant was "really" innocent–is directly contrary to *United States v. Schaffer*, 240 F.3d 35 (D.C. Cir. 2001). Although amicus protests (Br.23-24) that *Schaffer* did not address financial punishment from a conviction, *Schaffer* cannot be read so narrowly. *Schaffer* expressly rejected the "odd suggestion" that when a defendant is pardoned while on appeal, the conviction remains "established as a matter of law" or a "fait accompli." 240 F.3d at 38.

Instead, "because the appeals process was terminated prematurely" and "[f]inality was never reached on the *legal question* of Schaffer's guilt[,]" the guilty verdict and Schaffer's claim of innocence were equally "lost" to mootness, requiring vacatur of the conviction. *Id.* (emphasis in original). And, because vacatur restores the presumption of innocence to which defendants are entitled in the absence of a conviction, *see Nelson v. Colorado*, 581 U.S. 128, 135 (2017) (citing *Johnson v. Mississippi*, 486 U.S. 578, 585 (1988)), *Schaffer* unsurprisingly "vacate[d] all opinions, judgments, and verdicts" without reservation, 240 F.3d at 38; it did not suggest a carve-out for some or all of the defendant's $5,000 fine. *Cf. United States v. Schaffer*, 121 F.Supp.2d 29, 30 (D.D.C. 2000).

*Schaffer* also precludes amicus's further argument (Br.23-24) that the vacaturs here did not entitle appellants to refunds because their cases were not truly moot. Even assuming arguendo that, following the pardons, there remained a live dispute as to whether appellants were entitled to refunds (an assumption that is incorrect[1]), the government–

---

[1] *Schaffer* stated that the parties were "quite right" that a pardon moots an ongoing appeal, 240 F.3d at 36, so that is not an open question. It is thus unsurprising that, as amicus concedes (Br.24-25), this Court has dismissed as moot the appeals of at least two other pardoned defendants

(continued . . . )

as in *Schaffer*–"readily concede[d]" mootness before this Court ordered vacatur. *See* 240 F.3d at 38. Appellants were entitled to rely on that concession, and just as the government could not, post-concession, insist that Schaffer's conviction remain on the record, neither may the government (or the district court purporting to act in the government's stead) insist that it retains a right to appellants' money. In other words, amicus is correct (Br.23) that it is now too late to litigate whatever pre-vacatur dispute existed as to appellants' money, but it was the government, not appellants, who gave up its claim by agreeing to vacatur.[2]

### 2. The Appropriations Clause Does Not Bar Repayment.

Although amicus appears to argue at length (Br.35-50) that even if appellants are entitled to refunds, that right cannot be enforced without

---

over their objections. Amicus suggests this was error, but this Court had it right; the public interest would not be served by expending government and court resources on litigating post-pardon appeals. That wasteful expenditure could be substantial, because monetary assessments are imposed with nearly every criminal sentence.

[2] Moreover, amicus's insistence that appellants had to obtain "reversal" on appeal before obtaining refunds is precisely the kind of innocence-proving hurdle that *Nelson* prohibits. *See* 581 U.S. at 134-36, 139.

a Congressional appropriation, on closer inspection amicus's argument is predicated on the belief that appellants really have no right to the money. In particular, amicus does not actually dispute (Br.27,43) that, per *Nelson*, 581 U.S. at 135, a defendant whose conviction has been "reversed" must be refunded money exacted in punishment for that conviction. Instead, amicus insists (Br.27-28) that *Nelson* does not apply to a pardoned defendant. As explained supra, however, appellants' convictions were vacated. They accordingly do *not* "still ha[ve] a criminal conviction" (Br.28), and *Nelson*'s rule applies.[3]

Similarly, amicus's argument (Br.45-47) that 31 U.S.C. §1322(b)(2) does not authorize the refunds rests on the premise that appellants' vacaturs have only prospective effect. Because appellants' convictions were valid at the time the penalties were paid, amicus reasons (Br.46-47) that the government's receipt of that money was not "erroneous" within

---

[3] Amicus fleetingly (Br.43) suggests that *Nelson* might not provide a remedy, because it did not concern the Appropriations Clause or the Treasury. As explained in the government's opening brief (at 14-20), although *Nelson* addressed a state repayment procedure, it applied the same Fifth Amendment Due Process principles applicable to the federal government. This Court should construe the Appropriations and Due Process Clauses to harmonize them, not render them in conflict.

the meaning of §1322(b)(2). Amicus's interpretation of "erroneous" as meaning only "erroneous at the time of receipt" would render §1322(b)(2) extraordinarily cumbersome, literally precluding repayments even after subsequent court decisions correcting the interpretation of a law. Indeed, even amicus (Br.46) concedes that "retroactive[]" changes would permit essentially nunc-pro-tunc treatment of payments as "erroneous." But the erasure of appellants' convictions necessarily means that the government's retention of the money does not "remain[] as legally supported now as it was then" (Br.46); the judgments creating the government's claim are gone. Insisting that the money stay in the Treasury is precisely the kind of "fait accompli" that is inconsistent with vacatur, *see Schaffer*, 240 F.3d at 38, and it is appropriate to refund the money under §1322(b)(2).

Finally, amicus's objection (Br.47-49) to returning Sullivan's forfeited money is predicated on the belief that 28 U.S.C. §2465 authorizes refunds only where a conviction has been "reversed." As explained supra, amicus errs in insisting (Br.48-49) that the vacatur was not a "reversal" and Sullivan was required to pursue his direct appeal after the pardon. Because Sullivan did not "waive[]" any right to his

11

money when this Court dismissed his appeal as moot (Br.49), the district court should not have prevented the government from returning it from escrow.

## CONCLUSION

WHEREFORE, the government respectfully submits that the judgments of the District Court should be reversed.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

CHRISELLEN R. KOLB
DANIEL J. LENERZ
KACIE WESTON
Assistant United States Attorneys

/s/

NICHOLAS P. COLEMAN
D.C. Bar #460109
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Nicholas.Coleman@usdoj.gov
(202) 252-6829

12

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this brief contains 1,999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/

NICHOLAS P. COLEMAN
Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Consolidated Brief for the United States to be served by electronic means, through the Court's CM/ECF system, upon counsel for (1) appellant John Sullivan, Steven R. Kiersh, Esq.; (2) appellant Hector Emmanuel Vargas Santos, Nandan Kenkeremath, Esq.; (3) appellant Bruna J. Cua, Rosanna M. Taormina, Esq., Assistant Federal Public Defender; (4) appellant Stacy W. Hager, Katherine Marie Hurrelbrink and Daniel J. Yadron, Jr., Esqs., Federal Defenders of San Diego, Inc.; (5) appellant Derek Kinnison, Rohit Rajan, Esq., Federal Public Defender, Las Vegas, Nevada; and (6) amicus curiae Catherine E. Stetson, Esq., University of Virginia Law School, on this 24th day of June, 2026.

/s/
NICHOLAS P. COLEMAN
Assistant United States Attorney