**ORAL ARGUMENT NOT YET SCHEDULED**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————————

**No. 25-3059
Consolidated with 25-3074, 25-3076, 25-3078, 25-3093**

————————————————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

v.

JOHN EARLE SULLIVAN
*Defendant-Appellant*

————————————————

CONSOLIDATED APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

————————————————

**REPLY BRIEF FOR APPELLANTS
SULLIVAN, VARGAS, HAGER, CUA, AND KINNISON**

————————————————

STEVEN R. KIERSH
Law Offices of Steven R. Kiersh
5335 Wisconsin Ave, NW
Suite 440
Washington, DC 20015
(202) 347-0200
*Counsel for John Earle Sullivan*

NANDAN KENKEREMATH
2707 Fairview Court
Alexandria, Virginia 22311
(703) 407-9407
*Counsel for Hector Vargas Santos*

DANIEL J. YADRON, JR.
Federal Defenders of San Deigo, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467
*Counsel for Stacy Wade Hager*

A.J. KRAMER
Federal Public Defender
ROSANNA M. TAORMINA
Asst. Federal Public Defender
625 Indiana Avenue, NW
Washington, DC 20004
(202) 208-7500
*Counsel for Bruno Cua*

RENE VALLADARES
Federal Public Defender
ROHIT RAJAN
Asst. Federal Public Defender
411 E. Bonneville Ave, #250
Las Vegas, NV 89101
(702) 388-6261
*Counsel for Derek Kinnison*

District Court Nos. 21-cr-00078-RCL (Sullivan), 21-cr-00047-RDM (Vargas), 21-cr-00381-TSC (Hager), 21-cr-00107-RDM (Cua), 21-00392-RCL-5 (Kinnison)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

TABLE OF ABBREVIATIONS .............................................................................v

SUMMARY OF ARGUMENT ...............................................................................1

ARGUMENT ..........................................................................................................3

   I.    THE DISTRICT COURT HAD JURISDICTION OVER MOST REFUND REQUESTS ...................................................................................3

       A.    The Non-Sullivan Motions Presented Live Controversies ...................3

       B.    Vargas's Ancillary-Jurisdiction Position .................................................4

   II.    THE GOVERNMENT HAS NO RIGHT TO RETAIN MONETARY PENALTIES PAID PURSUANT TO NOW-VACATED CONVICTIONS ....................................................................................4

       A.    The Law Recognizes No Second-Class Vacatur ...................................4

       B.    Amicus Misreads *Knote* .........................................................................6

       C.    Amicus's Theory Is Incompatible With This Court's *Schaffer*-Based Mootness Rulings .................................................................................8

   III.    THE APPROPRIATIONS CLAUSE POSES NO BARRIER TO RELIEF .................................................................................................10

       A.    The Government Never Acquired Vested Title To Appellants' Funds .................................................................................................10

       B.    The Judgment Fund Authorizes Refunds ...........................................11

            1.    Equitable Restitution ...............................................................11

            2.    Little Tucker Act .....................................................................12

            3.    28 U.S.C. § 2465 ....................................................................14

C.  These Penalties Are Refundable As Erroneously Received ...............16

D.  Sovereign Immunity Does Not Bar Recovery ...................................18

IV.  VARGAS'S ADDITIONAL AND ALTERNATIVE GROUNDS FOR REMAND ..................................................................................................19

A.  Entitlement Is Based On This Court's Vacatur Orders And The Mandate Rule Applies ........................................................................19

B.  There Is A Duty To Facilitate Remedies Where There Is An Entitlement. ...........................................................................................20

C.  Amicus Fails To Consider Certain Constitutional Issues ...................20

D.  The Judgment Fund Is Not Limited To Judgments Pursuant To A Statutory Right ....................................................................................21

E.  There Are Multiple Permissible Interpretations of 31 U.S.C. § 1322(b)(2) ..........................................................................................21

CONCLUSION ...............................................................................................23

CERTIFICATE OF COMPLIANCE ...............................................................24

CERTIFICATE OF SERVICE ........................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Balt. & Ohio R.R. Co. v. United States*, 279 U.S. 781 (1929)................................11

*Boeing Co. v. United States*, 968 F.3d 1371 (Fed. Cir. 2020) ................................13

*Bull v. United States*, 295 U.S. 247 (1935)................................................................18

*Burdick v. United States*, 236 U.S. 79 (1915)............................................................12

*Camreta v. Greene*, 563 U.S. 692 (2011) ..........................................................3, 17

*Casa de Cambio Comdiv S.A. de C.V. v. United States*, 48 Fed. Cl. 137 (Ct. Cl. 2000) ................................................................................................................13

*Cortes v. Nat'l Lab. Rels. Bd.*, 145 F.4th 57 (D.C. Cir. 2025) ................................3

*Fischer v. United States*, 603 U.S. 480 (2024) ........................................................15

*Hewitt v. United States*, 606 U.S. 419 (2025)................................................5, 16, 17

*Kizas v. Webster*, 707 F.2d 524 (D.C. Cir. 1983) ....................................................21

*Knote v. United States*, 95 U.S. 149 (1877)................................................2, 6, 7, 8, 10

*LaShawn A. v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996) ..............................................9

*Lewis v. United States*, 445 U.S. 55 (1980) ............................................................14

*Lorance v. Commandant, U.S. Disciplinary Barracks*, 13 F.4th 1150 (10th Cir. 2021) ................................................................................................................12

*Motlow v. State of Missouri ex rel. Koeln*, 295 U.S. 97 (1935)..............................15

*Nelson v. Colorado*, 581 U.S. 128 (2017) ..................................5, 8, 14, 20, 21, 22

*Norman v. United States*, 429 F.3d 1081 (Fed. Cir. 2005)....................................13

*North Carolina v. Rice*, 404 U.S. 244 (1971)............................................................9

*Osborn v. United States*, 91 U.S. 474 (1875) ............................................................7

*Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80 (1992)................14, 15

*Synagogue v. United States*, 482 F.3d 1058 (9th Cir. 2007) ............................15, 16

*Tyler v. Defrees*, 78 U.S. 331 (1870) ........................................................................11

*Tyler v Hennepin County*, 598 U.S. 631 (2023) ..................................................20, 21

*United States v. Ballenger*, 811 F. Supp. 3d 123 (D.D.C. 2025)........................3, 21

*United States v. Blavatnik*, 168 F. Supp. 3d 36 (D.D.C. 2016) ...............................12

*United States v. Dalm*, 494 U.S. 596 (1990)..........................................................18

*United States v. DeFries*, 129 F.3d 1293 (D.C. Cir. 1997) ......................................15

*United States v. Grasso*, 500 F. Supp. 2d 511 (E.D. Pa. 2007).............................15

*United States v. Hansen*, 906 F. Supp. 688 (D.D.C. 1995) ....................................14

*United States v. Hayes*, 385 F.3d 1226 (9th Cir. 2004)....................................18, 19

*United States v. Jackson*, 7 F.4th 261 (5th Cir. 2021) ............................................15

*United States v. Klein*, 80 U.S. 128 (1871)..............................................................10

*United States v. Lewis*, 478 F.2d 835 (5th Cir. 1973)..............................................14

*United States v. Libous*, 858 F.3d 64 (2d Cir. 2017) ................................................6

*United States v. Mitchell*, 463 U.S. 206 (1983).......................................................12

*United States v. Plunk*, 511 F.3d 918 (9th Cir. 2007)..............................................15

*United States v. Raines*, 362 U.S. 17 (1960)............................................................4

*United States v. Schaffer*, 240 F.3d 35 (D.C. Cir. 2001) .............5, 6, 8, 9, 12, 19, 20

*United States v. St. Cyr*, 804 F. Supp. 3d 1 (D.D.C. 2025) ....................................21

*United States v. Testan*, 424 U.S. 392 (1976)..........................................................13

*United States v. Wilson*, 540 F.2d 1100 (D.C. Cir. 1976) ........................................4

iv

*United States v. Windsor*, 570 U.S. 744 (2013)........................................................3

**Constitutional Provisions, Federal Rules, Statutes, & Regulations**

Appropriations Clause, U.S. Const. Article 1, Section 9, Clause 7...........2, 8, 10, 11

Due Process Clause, Fifth Amendment ................................................13, 14, 20, 22

Federal Rule of Criminal Procedure 48 ................................................................9

28 U.S.C. § 2414 ..............................................................................................4, 21

28 U.S.C. § 2465 ..............................................................................................14, 15

31 U.S.C. § 1304 ..........................................................................................4, 11, 21

31 U.S.C. § 1322 ................................................................................2, 16, 17, 21, 22

55 Comp. Gen. 243 (Sept. 22, 1975) ....................................................................17

63 Comp. Gen. 189 (Feb. 7, 1984) ......................................................................18

**Miscellaneous Authorities**

Restatement (Third) of Restitution and Unjust Enrichment § 18 (2011) ................11

## TABLE OF ABBREVIATIONS

AB: .............................................................................Joint Appellants' Brief citation

AmB: ...............................................................................Amicus's Brief citation

GB: ............................................................................. Government's Brief citation

JA: ...............................................................................Joint Appendix citation

VA: ............................................................................. Vargas Appendix citation

VB: .................................................................................Vargas Brief citation

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No.  25-3059**
**Consolidated with 25-3074, 25-3076, 25-3078, 25-3093**

_____

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

v.

JOHN EARLE SULLIVAN
*Defendant-Appellant*

_____

CONSOLIDATED APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

_____

**REPLY BRIEF FOR APPELLANTS**
**SULLIVAN, VARGAS, HAGER, CUA, AND KINNISON**

_____

## SUMMARY OF ARGUMENT

1.  Jurisdictional adversity existed for all appellants except Sullivan, as the government had promised to return his funds before the district court's order prohibiting it from doing so.

2.  Amicus's analysis obscures the entitlement analysis, as it treats the reason a conviction was vacated as though it determines the legal consequences of that vacatur and conflates questions of remedy with entitlement.  Amicus provides no authority for the proposition that the government has the right to retain

conviction-dependent monetary penalties after the convictions supporting those penalties have been vacated.  There is none, as *Knote v. United States*, 95 U.S. 149 (1877), supports appellants' entitlement.

Amicus's alternative theory — that this Court erred when it dismissed appellants' appeals — fares no better, as it is wrong on the merits and foreclosed by this Court's mandate and law-of-the-case principles.

3.      Amicus's Appropriations Clause argument rests on the mistaken premise that Treasury deposit alone vests title in the government.  Even if the Clause applies, amicus fails to defeat the Judgment Fund and 31 U.S.C. § 1322(b)(2) as payment routes, and sovereign immunity does not bar relief.

4.      Vargas separately argues that amicus disregards the scope of this Court's vacatur orders and the mandate rule and overstates the remedial obstacles. Vargas's entitlement argument rests solely on the authority of the Article III vacatur and not the Article II pardon.  The vacatur orders establish entitlement, ancillary jurisdiction permits implementation, and amicus misreads both the Judgment Fund and § 1322(b)(2), which are among available options.

## ARGUMENT

## I.    THE DISTRICT COURTS HAD JURISDICTION OVER MOST REFUND REQUESTS.

### A.    The Non-Sullivan Motions Presented Live Controversies.

Article III requires adverseness between the parties to "sharpen[] the presentation of issues." *Camreta v. Greene*, 563 U.S. 692, 701 (2011) (citation modified). Although the parties "desired the same result" (GB:4), adverseness can exist "even where the Government largely agrees with the opposing party on the merits." *United States v. Windsor*, 570 U.S. 744, 759 (2013) (citation modified). The question is whether the court's judgment would require government action and thus "have real meaning for the parties." *Cortes v. Nat'l Lab. Rels. Bd.*, 145 F.4th 57, 62 (D.C. Cir. 2025) (citation modified).

This case meets that standard. For most appellants, favorable district court judgments would have "affect[ed] the behavior of the [government]." *Id.* (citation modified). The government told Judge Moss in *Vargas* "that it requires a Court order to effectuate the payment and that it cannot act unilaterally." (VA:43-44 n.3.) For other appellants, it has continued to "withhold [the] action they desire." *Cortes*, 145 F.4th at 63. No court orders bar the government from refunding non-Sullivan appellants, yet the government has not done so.

The jurisdictional analysis differs for Mr. Sullivan alone. There, the government promised to "commence steps to return any funds seized." (JA:56.)

3

Thus, the requested relief would not have had "real meaning for the parties," as it would have duplicated existing efforts. Without that adverseness, the district court could not "adjudge the legal rights" of Mr. Sullivan. *United States v. Raines*, 362 U.S. 17, 21 (1960). The remaining appellants received no comparable promises.[1]

### B.    Vargas's Ancillary-Jurisdiction Position

Appellant Vargas further maintains that district courts possess ancillary jurisdiction to resolve post-judgment motions for return of funds in criminal cases. (VB:9 n.1; VA:43-44 n.3; AmB:16-18.) *United States v. Wilson*, 540 F.2d 1100, 1103 (D.C. Cir. 1976), outlines the criteria for ancillary jurisdiction. *See also United States v. Ballenger*, 811 F. Supp. 3d 123, 130-132 (D.D.C. 2025) ("[U]ndoing the effect of a vacated judgment . . . is . . . an incidental consequence of the vacatur."). As discussed in Section IV.D., district court orders provide a path to relief under 28 U.S.C. § 2414 and 31 U.S.C. § 1304 the government cannot provide alone.

## II.    THE GOVERNMENT HAS NO RIGHT TO RETAIN MONETARY PENALTIES PAID PURSUANT TO NOW-VACATED CONVICTIONS.

### A.    The Law Recognizes No Second-Class Vacatur.

Amicus's central premise is that appellants' convictions were vacated, but

---

[1] Although the government is now "willing to return [other appellants'] money" (GB:5), it has not done so, though no court order prevents repayment.

not in a manner that carries the ordinary consequences of vacatur.  Because the convictions were vacated following presidential pardons that rendered their appeals moot, amicus contends that appellants stand differently from defendants whose convictions were overturned for other reasons.  The law recognizes no such distinction.

The Supreme Court has described vacatur in categorical terms.  In *Nelson v. Colorado*, 581 U.S. 128, 135-36 (2017), the Court held that once convictions are "reversed or vacated," the presumption of innocence is restored, and the government loses any entitlement to retain conviction-dependent monetary exactions.  Critically, the Court rejected efforts to distinguish among forms of invalidation, explaining that "reversal is reversal, regardless of the reason, and an invalid conviction is no conviction at all."  *Id.* at 136 n.10 (citation modified).  Likewise, *Hewitt v. United States*, 606 U.S. 419, 431 (2025), explains that vacated orders are "void ab initio" and that "the law acts as though the vacated order never occurred."

Nor does *Schaffer* support the distinction amicus proposes.  To the contrary, this Court expressly rejected the suggestion that a pardoned defendant's conviction remains established as a matter of law, explaining that because the appeal had become moot, "[f]inality was never reached on the legal question of Schaffer's guilt" and the efficacy of the jury verdict remained "an unanswered question."

*United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001) (en banc) (per curiam).

Amicus insists that appellants are not entitled to relief because the merits of their appeals were never adjudicated. But the death-pending-appeal cases — holding that when a defendant dies pending appeal, his conviction is vacated and conviction-dependent monetary penalties may not be retained — expose the tension at the heart of amicus's argument. (*See* AB:17.)

Amicus does not meaningfully engage those authorities. Instead, it relegates them to a footnote and observes that death cases involve "abatement" rather than "mootness." (AmB:23 n.6.) But that observation describes the *procedural mechanism* by which the conviction is vacated; it does not explain why the *legal consequences* of vacatur should differ. Indeed, the death cases recognize that vacatur drives the entitlement to refund. *See, e.g.*, *United States v. Libous*, 858 F.3d 64, 67-69 (2d Cir. 2017). Amicus identifies no authority recognizing a second-class vacatur that erases a conviction but nevertheless permits the government to retain money exacted solely because of that conviction.

## B.    Amicus Misreads *Knote*.

Nothing in *Knote* changes this analysis. Amicus argues that "a criminal defendant who is subsequently pardoned does not get back the criminal penalties they paid" (AmB:19 (citing *Knote*)), but *Knote* says no such thing. First, *Knote* did not involve a criminal conviction or penalties, but an act of Congress that

6

authorized seizure of property belonging to supporters of the Confederacy.  More

importantly, *Knote* recognized that if the right to seized property/proceeds had not

yet vested in the United States at the time of President Johnson's pardon, it *should*

be returned:

> Where . . . property condemned, or its proceeds, have not thus vested,
> but remain under control of the Executive, or of officers subject to his
> orders, or are in the custody of the judicial tribunals, *the property will
> be restored or its proceeds delivered to the original owner, upon his
> full pardon*.

95 U.S. at 154 (emphasis added).

This aspect of *Knote* is not subtle.  *Knote* discusses at length how the pardon

power affects funds that have *not* "actually passed into the treasury"; and

highlights *Osborn v. United States*, 91 U.S. 474 (1875), which similarly involved

the Confiscation Act of 1862 and President Johnson's 1868 pardon.  *Knote*, 95

U.S. at 154-56.  *Osborn* affirmed the post-pardon refund of proceeds from property

held in the lower court's registry, observing that "it was of the essence of a pardon

that it relieved the offender from the consequences of his offence; and as in that

case the forfeiture of his property was one of those consequences, it restored the

property to him, unless the rights of other parties had vested, and the power of

restoration was gone." *Id.* at 156.  In *Osborn*, the proceeds remained in judicial

custody; in *Knote*, they had vested in the United States and entered the Treasury.

The pardon established entitlement in both cases; vesting determined whether an

appropriation was required.[2]

Thus, at its core, *Knote* is about the Appropriations Clause; and to the extent it addresses entitlement, *Knote* supports *appellants*. Amicus ignores this and instead conflates the questions of remedy and entitlement. The district courts likewise erred by premising their analyses on a false dichotomy of *Nelson* versus *Knote*.

C.    **Amicus's Theory Is Incompatible With This Court's *Schaffer*-Based Mootness Rulings.**

Amicus's characterization of appellants' position as "circular" rests on a mistaken premise. Appellants do not contend that they are entitled to refunds because their appeals became moot; they contend that they are entitled to recover conviction-dependent funds because their convictions were vacated and therefore do not provide a legal basis for government entitlement. Mootness entered the analysis only because of this Court's *Schaffer*-based dispositions.

Amicus's circularity argument thus reduces to a challenge to this Court's mootness rulings. According to amicus, appellants retained a legally cognizable stake in their criminal appeals because success on the merits, not vacatur alone, would have entitled them to recover the monetary penalties imposed pursuant to their convictions. On that theory, a live controversy still existed notwithstanding

---

[2] Treasury deposit alone does not establish vesting. *See infra* pp. 10-11.

the pardons, and "dismissing [appellants'] appeals as 'moot' was error." (AmB:22.)  Amicus is thus not merely disputing the consequences of this Court's prior rulings; it is challenging the rulings themselves.

That challenge is foreclosed.  After the pardons issued, the government moved to dismiss the prosecutions under Federal Rule of Criminal Procedure 48(a).  This Court chose a different path:  Citing *Schaffer*, the Court vacated appellants' convictions and remanded for dismissal on mootness grounds.  Under settled law-of-the-case principles, issues resolved "explicitly or by necessary implication" ordinarily may not be relitigated in later stages of the same case. *LaShawn A. v. Barry*, 87 F.3d 1389, 1393-95 (D.C. Cir. 1996) (en banc) (citation modified).  Amicus identifies no basis for departing from those principles.

Amicus's fallback waiver argument fares no better.  Appellants did not waive their claims by failing to oppose dismissal of their appeals.  Appellants maintain that recovery of conviction-dependent monetary penalties follows from vacatur of their convictions and does *not* depend on merits rulings.  Regardless, this Court dismissed the appeals because it concluded that they were moot under *Schaffer*, not because appellants consented to mootness dismissals.  Because mootness is jurisdictional, this Court had to independently satisfy itself that a live controversy no longer existed.  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Appellants cannot be faulted for accepting the Court's determination, especially

9

given its resolution — vacatur — entitles them to relief.

## III.    THE APPROPRIATIONS CLAUSE POSES NO BARRIER TO RELIEF.

### A.    The Government Never Acquired Vested Title To Appellants' Funds.

Amicus invokes the Appropriations Clause on the theory that appellants' funds became the property of the United States upon their deposit into the Treasury and may not be returned absent congressional authorization.  That theory conflates location of funds with ownership of them.

*United States v. Klein*, 80 U.S. 128, 138-39 (1871) — cited in *Knote* — held that proceeds could be paid into the Treasury "without change of ownership" where the law had not divested the original owner's title; in those circumstances, the government held the proceeds as trustee for the person entitled to them.  *Knote* is consistent, holding that once the United States acquired a vested right to proceeds and those proceeds were paid into the Treasury, their return required an appropriation.  95 U.S. at 154.  Read together, the cases demonstrate that the location of money does not determine ownership; the critical question is whether the government acquired title.

That threshold requirement is unsatisfied here.  Appellants' penalties were deposited before their convictions became final.  The government thus held the funds only provisionally — much like a trustee — subject to their return if the

10

judgments were vacated.  (AB:20 (citing *Tyler v. Defrees*, 78 U.S. 331, 349 (1870).))

### B.    The Judgment Fund Authorizes Refunds Under Several Sources.

If an appropriation is required, the Judgment Fund appropriates money to pay final judgments against the government.  31 U.S.C. § 1304(a).  Appellants have identified at least three bases for such a judgment.

### 1.    Equitable Restitution

Equity has long required the restoration of money collected under a judgment later vacated.  (AB:21-22 (collecting cases).)  Amicus questions only whether this principle applies here.  (AmB:49.)  It does.  When appellants' judgments were "set aside," "the law raised an obligation" for "restitution of the payments" made "in compliance with the order[s]."  *Balt. & Ohio R.R. Co. v. United States*, 279 U.S. 781, 786 (1929).

No equities narrow appellants' entitlement.  Vacatur eliminated the government's interest in retaining these penalties.  *Supra* pp. 4-6.  This "need to remedy th[e] misapplication of legal process—so that the law not stultify itself by requiring what it has declared may not be required—constitutes an important reason for restitution."  *Restatement (Third) of Restitution and Unjust Enrichment* § 18 Comment e (2011).  Amicus's central equitable objection — that vacatur does

11

not negate guilt (AmB:32.) — repackages its entitlement argument.[3]  The

convictions were vacated before appellate finality, leaving the efficacy of the

judgments unresolved.  *Schaffer*, 240 F.3d at 38.

This equitable principle empowers a district court to order restitution.

(AB:22 (collecting cases).)  And "decrees in equity," like restitution orders, qualify

as judgments, because they would be "final determination[s] of [appellants']

rights."  *United States v. Blavatnik*, 168 F. Supp. 3d 36, 42 (D.D.C. 2016) (citation

modified).  The Judgment Fund would then authorize payment.  (AB:21.)

### 2.    Little Tucker Act

Amicus concedes the Little Tucker Act could authorize a Judgment Fund

judgment, but contends that refunds fall outside the Act because they are not based

on authority requiring compensation.  (AmB:37-41.)  True, a claimant must

ordinarily "demonstrate that the source of substantive law he relies upon can fairly

be interpreted as mandating compensation by the Federal Government."  *United

States v. Mitchell*, 463 U.S. 206, 216-17 (1983) (citation modified).  But that rule

admits an exception.  With claims "for money improperly exacted or retained," a

---

[3]  *Burdick v. United States*, 236 U.S. 79, 91 (1915), says nothing about vacatur.
Although *Burdick* addresses pardons, "[n]othing in the Court's opinion purports to
establish that acceptance of a pardon is the legal equivalent of a confession of
guilt."  *Lorance v. Commandant, U.S. Disciplinary Barracks*, 13 F.4th 1150, 1157
(10th Cir. 2021).

claimant need not identify a compensation-mandating source of substantive law. *United States v. Testan*, 424 U.S. 392, 401-02 (1976). Despite amicus's claim that this exception appears nowhere in the statute (AmB:39-40), it has long been recognized. *See, e.g.*, *Testan*, 424 U.S. at 401. Accordingly, this Court must apply it.

Under the exception, "jurisdiction exists even when the Constitutional provision allegedly violated does not contain compensation mandating language." *Casa de Cambio Comdiv S.A. de C.V. v. United States*, 48 Fed. Cl. 137, 144 (Ct. Cl. 2000), *aff'd*, 291 F.3d 1356 (Fed. Cir. 2002). For this reason, *Norman* — amicus's case — recognizes that due process claims satisfy the exception.[4] 429 F.3d 1081, 1095 (Fed. Cir. 2005). Claimants need only establish the government has unlawfully retained their money. *Casa de Cambio*, 291 F.3d at 1363.

On the merits, amicus asserts the exception applies only if the exaction was unauthorized when performed. (AmB:41-43.) That argument ignores the exception's wording, which covers claims for money "improperly exacted *or retained*." *Testan*, 424 U.S. at 401 (emphasis added). Setting aside the exactions'

---

[4] Although amicus suggests the statute authorizing the exaction must still contemplate a refund (AmB:41), the Federal Circuit has rejected that overreading of *Norman*. *Boeing Co. v. United States*, 968 F.3d 1371, 1384 (Fed. Cir. 2020) ("We have, since *Norman*, assumed jurisdiction over statutory illegal exaction claims with no regard for whether the statutes were 'money-mandating.'").

lawfulness, the retention of appellants' money is unlawful. Due process requires the return of appellants' penalties and deprives the government of any "legal right" to "retain" them. *Nelson*, 581 U.S. at 136, 139.

Even focusing on the exactions, vacatur rendered them unlawful. Here, the government collected penalties under convictions later held to be invalid. Courts still characterize such penalties as "illegally collected." *See, e.g.*, *United States v. Lewis*, 478 F.2d 835, 836 (5th Cir. 1973). Amicus's attempts to distinguish such cases fail. (AmB:43-45.) Amicus does not explain why the basis for invalidating the conviction matters in determining the exaction's lawfulness. *See supra* pp. 4-6. Nor is the form in which relief is sought decisive. (AmB:45.) The authority flows from the Little Tucker Act. *United States v. Hansen*, 906 F. Supp. 688, 697 (D.D.C. 1995).

Either theory — unlawful retention or illegal exaction — supports refunds.

### 3. 28 U.S.C. § 2465

For Sullivan, § 2465 requires that the government return what it forfeited. The statute "authorize[s] the return of proceeds" connected with forfeiture proceedings. *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 96 (1992). The relevant requirement — that Sullivan "prevail in the underlying forfeiture action" — is met. *Id.* at 95. His forfeiture judgment has been vacated. Section 2465, with the Judgment Fund, then provides an appropriation. *Id.* at 95-

14

96.

Amicus contends that § 2465 applies only when forfeiture is overturned on the merits.  (AmB:48.)  That position finds no support.  A forfeiture order ceases to exist when the underlying judgment is vacated.  *United States v. Grasso*, 500 F. Supp. 2d 511, 521 (E.D. Pa. 2007).  Without "such [a] judgment," title no longer belongs to the government.  *Motlow v. State of Missouri ex rel. Koeln*, 295 U.S. 97, 99 (1935).  Once the government's entitlement disappears, the property "is improperly seized" and § 2465 allows for its return.  *United States v. Plunk*, 511 F.3d 918, 923 (9th Cir. 2007).

Amicus's own authority supports appellants.  (AmB:48 (citing *United States v. DeFries*, 129 F.3d 1293 (D.C. Cir. 1997) (per curiam)).)  *DeFries* reversed the forfeitures simply because the underlying convictions had been invalidated.  129 F.3d at 1312; *see also United States v. Jackson*, 7 F.4th 261, 264 n.1 (5th Cir. 2021).  But even if the basis for invaliding the conviction matters, Sullivan prevails.  Forfeiture depended on his 18 U.S.C. § 1512(c) conviction (JA:33), which is invalid under *Fischer v. United States*, 603 U.S. 480 (2024).

Amicus lastly asserts that the vacatur of Sullivan's conviction did not create "the judgment that Section 2465 requires."  (AmB:48-49.)  But vacatur clears the way for the district court to order the return of Sullivan's property.  That order adjudicating Sullivan's right to the funds is the "judgment" § 2465 contemplates.

15

*Synagogue v. United States*, 482 F.3d 1058, 1062 (9th Cir. 2007).

### C.    These Penalties Are Refundable As Erroneously Received.

31 U.S.C. § 1322(b)(2) allows the government to refund "erroneously deposited" penalties.  Amicus disputes whether the deposits here were erroneous. (AmB:45-47.)

Collection of appellants' penalties depended on valid convictions.  (AB:15.) Vacatur of those convictions thus rendered the authorization for collection "legally inoperable."  *Hewitt*, 606 U.S. at 431.  That is so even if the penalties were lawfully exacted when collected.  "By operation of legal fiction, the law acts as though the vacated order never occurred."  *Id.*  The deposits of appellants' penalties must therefore be treated as erroneous.

Amicus rejects this straightforward application of *Hewitt*, believing that vacatur removes only "prospective legal effect" from vacated orders.  (AmB:29.) But *Hewitt* addressed both prospective and retrospective effects.  Looking backwards, vacated orders cease to exist even "as a historical fact" because vacatur "wipes the slate clean."  606 U.S. at 432 & n.8 (citation modified).

Even the purely prospective effects of vacatur compel relief, as this case also concerns the effect of vacatur "going forward," *id.* at 431, since it addresses the

effect of vacatur on appellants' post-vacatur requests for refunds.[5]  On that score, this case tracks *Hewitt*, which asked whether "a sentence had been imposed upon the defendant, even though it was later vacated."  *Id.* (citation modified).  For post-vacatur resentencing, the answer was no:  the defendant had to be treated as though he had never been sentenced.  *Id.*

The same logic applies here.  Vacatur has erased appellants' convictions, stripping the judgments of "continuing legal effect" in justifying the collection of appellants' penalties.  *Hewitt*, 606 U.S. at 432 n.8.  Without such justification, the government has taken these funds erroneously.  This conclusion accords with vacatur's purpose.  "The point of vacatur is to prevent" its object "from spawning any legal consequences, so that no party is harmed by" it.  *Camreta*, 563 U.S. at 713 (citation modified).

Nothing in § 1322(b)(2) disturbs this, as a later decision can render a penalty erroneously deposited, even though a statute authorized its collection when performed.  *See* 55 Comp. Gen. 243, 243-44 (Sept. 22, 1975) (allowing refunds because fees were collected under a statute likely invalidated by subsequent

---

[5] *Hewitt* already rejected amicus's analogy to vacated predicate offenses for felon-in-possession convictions.  (AmB:30.)  Amicus's cases trace to *Lewis v. United States*, 445 U.S. 55 (1980), which — as *Hewitt* explained — upheld a federal conviction only because the defendant's prior felony "had never been overturned — *i.e.*, vacated — at the time he possessed the weapon."  *Hewitt*, 606 U.S. at 432 n.8 (citation modified).

Supreme Court decisions); 63 Comp. Gen. 189, 192 (Feb. 7, 1984) (collecting similar examples). (*See also* AB:30.) Amicus's example (AmB:46) thus does not exhaust the scenarios in which penalties may be refunded.

### D. Sovereign Immunity Does Not Bar Recovery.

Amicus raises sovereign immunity, but it does not apply. (AmB:33-35.) Sovereign immunity does not bar recovery on claims arising from "the same transaction" as the government's suit. *United States v. Dalm*, 494 U.S. 596, 610 (1990). That is this case. The government initiated these prosecutions, and appellants seek to recover only the funds collected under their now-vacated convictions.

Amicus characterizes appellants' claims as "unrelated" to these prosecutions. (AmB:34.) But vacatur of the convictions the government sought is what entitles appellants to relief and extinguishes any claim of right by the government. *Supra* pp. 4-6. Those judgments, after all, provided the only basis for collecting penalties. (AB:15.) Appellants' entitlement therefore traces to "some feature of the transaction upon which the plaintiff's action is grounded," making sovereign immunity inapplicable. *Bull v. United States*, 295 U.S. 247, 262 (1935). Courts have rejected sovereign immunity in similar circumstances. *See, e.g.*, *United States v. Hayes*, 385 F.3d 1226, 1229 & n.2 (9th Cir. 2004) (explaining that the government's sovereign immunity claim "clearly fail[ed]" because "the

recovery of wrongly paid fines is incident to the vacating and setting aside of the wrongful conviction" (citation modified)).  (*See also* AB-34.)

## IV.    VARGAS'S ADDITIONAL AND ALTERNATIVE GROUNDS FOR REMAND.

### A.    Entitlement Is Based On This Court's Vacatur Orders And The Mandate Rule Applies.

Mr. Vargas argues this Court's vacatur orders establish the controlling legal predicate and apply *ab initio* to all components of the vacated judgment.  Under the mandate rule, district courts may not deny, limit, qualify, or reassess entitlement based on their own assessments of law, equity, or remedial difficulty.  (VB:16-17.)  The repayment mechanisms are not in the mandate but the right to repayment is.  Mr. Vargas presented a fulsome mandate-rule analysis under Supreme Court jurisprudence in his opening brief.  (VB:16–23, 36–38.)  That argument rests on the Article III vacatur, not the Article II pardon.

Amicus did not engage Vargas's mandate-rule argument.  Amicus also incorrectly claims "the dispute in *Schaffer* was only about what happens to the conviction itself."  (AmB:24.)  This Court vacated the "judgment of the district court," not merely appellants' convictions.  Criminal judgments encompass their monetary components.  This Court's orders contain no reservation preserving fines, restitution, assessments, or forfeiture as a separate category of operation.  (VB:4-5, 17-20.)  *Schaffer* itself vacated "all underlying judgments, verdicts, and

decisions of the District Court," including a judgment imposing a $5,000 fine. 240 F.3d at 37-38.

Amicus's "pardon vacatur" and "mootness vacatur" arguments for subclasses of vacatur and different operational rules for different components, including with respect to the *ab initio* construct (AmB:12-14, 19-25) rely on a false predicate bifurcation of components under the orders, violates the mandate rule, removes finality, and creates needless uncertainty.

### B.      There Is A Duty To Facilitate Remedies Where There Is An Entitlement.

Mr. Vargas maintains once entitlement exists, courts and the government must attempt to implement a lawful repayment process. (VB:34–35.) Further, *Nelson* applies Due Process principles that the Fifth Amendment independently imposes on the federal government to set Constitutional standards for return of fees in vacated cases. (VB:22-24, 44-46; GB:17-18.)

### C.      Amicus Fails to Consider Certain Constitutional Issues.

As discussed above, amicus fails to properly consider *Nelson* Due Process. In addition, an Article II pardon cannot limit the legal scope of an Article III vacatur as a matter of Separation of Powers. (VB:37-41.) Failure to find remedies for appellate vacaturs impacts the integrity and operation of Article III courts. (VB:37-41.) Further, a finding of non-entitlement raises serious Takings concerns. (VB:46-49.) Mr. Vargas cited *Tyler v Hennepin County*, 598 U.S. 631, 639

(2023), which says that the government cannot "confiscate more property than was due." *Nelson* recognized "the risk of erroneous deprivation of property." 581 U.S. at 138. Amicus counters only with *Kizas*, which talks only about "legitimate expectations" receiving a preference. 707 F.2d 524, 534 (D.C. Cir. 1983). *Kizas* preceded *Tyler* and is nothing like the entitlement in the instant cases.

### D. The Judgment Fund Is Not Limited To Judgments Pursuant To A Statutory Right.

Amicus claims, in error, that the Judgment Fund authorizes payment solely on the basis of a judgment resting on a substantive right to compensation grounded in the terms of a specific statute. (AmB:49.) By their terms, 28 U.S.C. § 2414 and 31 U.S.C § 1304 together authorize payment based on qualifying final district court judgment. There is no limitation to judgments with a statutory basis or to use of any given jurisdictional provision. Amicus itself acknowledges the existence of ancillary jurisdiction in these proceedings. Tucker Act limitations would not be relevant for orders if under ancillary jurisdiction. (*See also* GB:21.) The judgment orders in *Ballenger* and *St. Cyr* directing the United States to pay specific sums of money satisfy the textual requirements of 28 U.S.C. § 2414 and 31 U.S.C. § 1304.

### E. There Are Multiple Permissible Interpretations of 31 U.S.C. § 1322(b)(2).

Vargas argues there are multiple permissible interpretations of "erroneously deposited" under 31 U.S.C. § 1322(b)(2). For example, a deposit that precludes

foreseeable possibility of relief from appellate vacatur given that *Nelson* Due

Process may now be an "erroneous" one.  (VB:58-59.)  Further, the *ab initio*

principle of vacating the judgment applies to the predicate for the payment and

supports treating the deposit as "erroneous" for purposes of § 1322(b)(2).  Nothing

in the statute defines "erroneous" as frozen in time of deposit or immune from the

*ab initio* construct.  (*See also* GB: 21-23.)

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court reverse the district courts' orders denying relief and remand with instructions to order the refund of all criminal monetary penalties and assessments paid.

Respectfully submitted,

_____/s/_____
Steven R. Kiersh
Law Offices of Steven R. Kiersh
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
(202) 347-0200
*Counsel for John Earle Sullivan*

_____/s/_____
Nandan Kenkeremath
2707 Fairview Court Alexandria,
Virginia 22311 (703) 407-9407
*Counsel for Hector Vargas Santos*

A.J. Kramer
Federal Public Defender
_____/s/_____
Rosanna M. Taormina
Assistant Federal Public Defender
625 Indiana Avenue, NW
Washington, DC 20004
(202) 208-7500
*Counsel for Bruno Cua*

_____/s/_____
Danny Yadron
Federal Defenders of San Deigo, Inc.
225 Broadway
Suite 900
San Diego, CA 92101
(619) 234-8467
*Counsel for Stacy Wade Hager*

Rene Valladares
Federal Public Defender
_____/s/_____
Rohit Rajan
Assistant Federal Public Defender
411 E. Bonneville Avenue, Suite 250
Las Vegas, NV 89101
(702) 388-6261
*Counsel for Derek Kinnison*

23

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing contains 4,476 words in Times New Roman 14 pt. font and does not exceed the word limit of Fed. R. App. P. 32(a)(7).

_____/s/_____
Rosanna M. Taormina
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on June 24, 2026.  I certify that appellee in this case is a registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

_____/s/_____
Rosanna M. Taormina
Assistant Federal Public Defender