# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 25-3059

Consolidated with 25-3074, 25-3076, 25-3078, 25-3093

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JOHN EARLE SULLIVAN, et al.,

*Defendants-Appellants.*

_____

**STATEMENT OF APPELLANT HECTOR VARGAS SANTOS UNDER FEDERAL RULE OF APPELLATE PROCEDURE 34(a)(1) ARGUING THE NEED FOR ORAL ARGUMENT FOR MR. VARGAS AS A PARTY**

**I.     THIS STATEMENT RELIES ON THE RIGHTS OF A PARTY UNDER FRAP 34(a)(1) AS A STEP TO IMPLEMENT THE PRESUMPTION OF ORAL ARGUMENT UNDER FRAP 34(a)(2) FOR THAT PARTY'S ARGUMENTS**

Federal Rule of Appellate Procedure (FRAP) 34(a)(1) and Rule 34(a)(2)

operate together as a unified framework. Rule 34(a)(1) provides a

mechanism: any party may file a statement explaining why oral

1

argument should be permitted. Rule 34(a)(2) provides a standard: oral argument is presumed allowed in every case unless a panel of three judges unanimously finds that one of three exceptions applies. A party filing a statement under 34(a)(1) may file for the purpose of invoking and articulating the immediately following 34(a)(2) presumption to address the elements of the exceptions in 34(a)(2) with respect to a particular party's presumption.

Note Vargas is a party for purposes of 34(a)(1) and the standards 34(a)(2) applies to a party's presumption of opportunity for oral argument.

This appeal is not frivolous, and Rule 34(a)(2)(A) therefore provides no basis for dispensing with oral argument.

Rule 34(a)(2)(B) refers to "the dispositive issue or issues," recognizing that an appeal may present multiple distinct issues requiring separate consideration. Vargas believes there are dispositive issues in his favor, but district courts and the parties disagree among themselves.

Rule 34(a)(2)(C) asks whether "the decisional process would not be significantly aided by oral argument." As suggested in 34(a)(2), this assessment can be reviewed by examining each of the briefs.

Vargas notes this presumption is part of FRAP and the provisions in Circuit Rule 34(c) and (d) should be read consistent with the rights of a party under FRAP 34(a)(1) and (2). 34(c) and (d) are not exemptions to the presumption. This presumption applies to parties and not amicus.

## II.   VARGAS PROVIDES DISTINCT, CONSEQUENTIAL, AND ADDITIONAL LEGAL MEANS TO PREVAIL

Vargas files this statement because he filed an independent opening brief and limited reply brief presenting several distinct and consequential arguments not advanced by other parties. The Vargas analytical framework also differs in its sequence, hierarchy, and operation from the approaches advanced in the other briefs with respect to the scope of vacatur and mandate rule. Neither the briefs of other appellants nor the government makes a single cross reference to the Vargas opening brief ("VB") concerning legal argument despite significant time to review. This notice is not a statement of the validity of merits or the choices of any participant. Other parties may

characterize the arguments differently, but even such difference in characterization is why Vargas's role in an oral argument is important.

The primary theme is that Vargas, the party vindicating his own rights, provides distinct, consequential and additional means to prevail. This makes Vargas the only participant positioned to explain and defend those arguments at oral argument.

### A. Vargas's Arguments on Jurisdiction Are Distinct, Consequential, And Provide Additional Legal Means to Prevail

In district court for Vargas to prevail on his motion he needed to establish two things. First, he needed to establish district court jurisdiction to entertain his motion. Second, he needed to prevail on the merits that the D.C. Circuit order provided entitlement to repayment. Vargas prevailed in district court on the first but did not prevail on the second, which is why he appealed.

The government raised its no-adversity jurisdictional attack for the first time in its own brief (Doc. 2162978), filed after Vargas's opening brief (Doc. 2135886), and filed after *Ballenger*, 811 F. Supp. 3d 123, 130-32 (D.D.C. 2025).

The Government Opening Brief ("GB") argues that the district courts lacked jurisdiction to enter orders prohibiting the refunds, because the parties were not adverse. (GB:3-4). If accepted, this reasoning supplies an alternative basis for a district court to deny Vargas's motion: if the district court lacked jurisdiction because there was no case or controversy, it lacked jurisdiction to grant the motion.

Vargas must now prevail in the government's attack.  Vargas makes two arguments which other participants do not articulate in the context of jurisdiction.  The first legal basis is ancillary jurisdiction not requiring issue by issue disagreement. The second is the *Ballenger* order comparison as an example of a result Vargas seeks and that the government argument would not produce—meaning adversity.  Vargas also cites to and adopts the amicus brief argument in his limited space in reply. Consolidated Appellants' Reply Brief ("ARB") (ARB:4).

The relevant jurisdictional question concerns the district court's jurisdiction over Vargas's post-judgment motion, not this Court's jurisdiction to review the district court's order. The jurisdictional statement in Vargas's opening brief states that the district court has jurisdiction over the criminal case under 18 U.S.C. § 3231, and, in

5

addition, "ancillary jurisdiction to the criminal case." (VB:1). Footnote 1 explains this further, citing Judge Moss's opinion at note 3 and cases including *Wilson v. United States*, 540 F.2d 1100, 1103-04 (D.C. Cir. 1976), and *Morrow v. District of Columbia*, 417 F.2d 728 (D.C. Cir. 1969). (VB:9 n.1).

No brief from the government, other appellants, or amicus refers to ancillary jurisdiction, the Moss Opinion, or *Wilson* or *Morrow* in the context of jurisdiction. Accordingly, no brief explains how "adversity" works in the context of ancillary jurisdiction.

As a second argument or example, Vargas further seeks the kind of judgment entered in *Ballenger* — a determination of liability against the United States and an order directing return of funds which, among other things, can be a basis under the Judgment Fund. The government's theory would foreclose the district court's ability to ever enter that judgment. The government and Vargas are, thus, adverse in whether the district court should grant or deny the Vargas motion — the issue on appeal.

No brief from the government, other appellants, or amicus refers to the *Ballenger* example as one refuting the no adversity claim of the government.

Without space for further elaboration, Vargas adopts by reference the amicus argument as well. The amicus brief, however, does not address ancillary jurisdiction and *Ballenger*. (AmB:16-18).  Further, Vargas is the party vindicating his rights and should be heard.  Amicus does not substitute.

The appellant reply brief section of the other appellants takes a distinctly different tack on jurisdiction. (ARB:3-4).  Effectively, the other appellants accept the government argument for *Sullivan* but state the government promise to commence steps for *Sullivan* was not there in the other cases. Vargas has chosen not to adopt this argument or analytic method in his reply.

Accordingly, Vargas should be heard on his distinct, consequential, and additional legal arguments rebutting the government's attack on district court jurisdiction.

> **B. Vargas's Argument on the Scope of the D.C. Circuit Order and the Mandate Rule Is Distinct, Consequential, and**

### Provides an Additional Threshold Legal Means for Vargas to Prevail on Entitlement

With respect to entitlement, Vargas makes distinct, consequential and additional arguments allowing Vargas to prevail. Scope of vacatur is tied to the mandate rule.

1. **Vargas has Distinct, Consequential and Additional Legal Arguments Concerning Interpretation of Scope of the Vacatur Which Further Allow Vargas to Prevail**

Vargas's briefing states the vacatur order itself — not *Nelson v. Colorado*, 581, U.S. 128 (2017); *Hewitt v. United States* 606, U.S. 419 (2025); or general vacatur doctrine — is the controlling legal authority. (VB:27); (ARB:19). Vargas separately identifies scope of the vacatur stated or implied from the D.C. Circuit order, including from the actual text of the order and *United States v. Schaffer*, 240 F. 3d 35 (D.C. Cir. 2001) which is explicitly referred to in the order. Vargas quotes the order's own words ("the judgment of the district court be vacated") together with Schaffer's specific language on the breadth of vacatur ("all underlying judgments, verdicts, and decisions of the District Court"). (VB:16-17).

No other litigant quotes the order's own text though the government's reply brief ("GRB") similarly cites that Schaffer "vacate[d] all opinions,

judgments, and verdicts" without reservation. Still the government and other appellants frame the operative fact as the vacatur of Appellants' convictions, not the vacatur of the judgment. (GRB:7); (GB:9-10); Court-Appointed Amicus Brief ("AmB") (AmB:passim); Other Appellants' Opening Brief ("AB") (AB:15 )("Appellants here do not have valid convictions").

Vargas further argues neither rules of criminal procedure, rules of appellant procedure, nor 28 U.S.C. § 2106 appellate authority support different categories from a judicial order to vacate the judgment.

Much of the case law Vargas discusses in Sections II.D.(1) through II.D.(4), (VB: 22-33) of the opening brief — *Nelson*, *Hewitt*, and related authority — is reflected in a common way in the government's brief and the other appellants' brief and reply brief sections. Vargas, the government, and other appellants cite the same cases for similar propositions, including that a vacated conviction carries no legal basis to retain criminal penalties.

Vargas, however, uses this case law in at least two places or levels. First, these cases are an interpretive aid to construe the meaning and

scope of the D.C. Circuit's mandate — not an independent argument that district courts can reassess or integrate in a different manner. The question becomes what the D.C. Circuit ordered in scope, not the authority, validity, or label for the order. In addition, under the mandate rule the district court may not deny, limit, qualify, or reassess entitlement based on its own assessment of law, equity, or remedial difficulty. (VB:16-17, 36-38; ARB:19). This point has implications on multiple arguments in the briefing, including equitable principles.

Vargas further distinguishes entitlement, which is within the scope of the mandate, from the mechanism or choice of remedy, which is not. (VB:17; ARB:19). No other litigant draws this distinction.

As discussed below, Vargas also applies the cases as if there were no scope and mandate rule.

2. **Vargas's Argument on the Mandate Rule Provides Distinct, Consequential and Additional, Threshold Legal Means to Prevail on Entitlement**

None of the litigants cite the mandate rule at all. (VB:16-20) (citing *Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304 (1948); *In re Sanford Fork & Tool Co.*, 160 U.S. 247 (1895); *United States v. Bell*, 5 F.3d 64 (4th Cir. 1993)). The mandate rule is a key feature of Vargas's opening

brief at sections II.A, II.B, II.C, and II.D.7, together implement that framework. (VB:16-20, 35). No other participant engages the mandate rule argument in Vargas's opening brief.

Scope of the D.C. Circuit orders combined with the mandate rule is an additional means for Vargas to prevail on entitlement. The mandate rule is a threshold argument and if Judge Moss or amicus would need to argue entitlement is not within the scope of the D.C. Circuit to arrive at any alternative theory. Only if they could get through the mandate rule would the discussion turn to whether entitlement is independently found or assumed based on other authority.

Vargas reserves that the same arguments on *Nelson* and *Hewitt* shared by government, Vargas, and other appellants can independently apply by including the explicit argument that even if these issues fall outside of the mandate rule Vargas still prevails. (VB:37-49).

Explicitly Vargas states:

> As previously discussed, the vacatur of the judgment by the D.C. Circuit—whether viewed as within the scope of the mandate or not—

carries the full legal consequence of nullifying the judgment as if the judgment never existed, i.e., *ab initio*….. The legal principles, precedents, and constitutional doctrines set forth in the prior section apply with full force here and foreclose the district court's suggestion that the pardon context can cabin or limit the refund entitlement that follows from vacatur. This brief front loads the argument into Section II but most of that applies equally in this section… (VB:37-38).

This structure explicitly creates at least two distinct levels or means that Vargas may prevail. A district court opposed to Vargas would need to prevail that the scope and mandate rule did not apply. Even if they succeeded, Vargas can prevail based on either step.

Accordingly, Vargas provides distinct, consequential and additional means of prevailing on entitlement.

### C. Vargas's Takings Clause Argument Is a Distinct, Consequential and Additional Means of Prevailing on Entitlement

Vargas is the only party to raise a Takings Clause argument, including by reference to *Tyler v. Hennepin County*, 598 U.S. 631 (2023), for the

proposition that the government may not retain property or funds in excess of what it is lawfully owed. (VB:46-47). This is part of the discussion in the alternative outside the scope and mandate rule. Nowhere does Vargas suggest the D.C. Circuit evaluated this as an alternative basis. No other litigant cites *Tyler* or mentions the Takings Clause anywhere in their briefing. Amicus responds in a footnote citing a 1983 case. (AmB:40 n.10), citing *Kizas v. Webster*, 707 F.2d 524, 539-40 (D.C. Cir. 1983).) This building block also forms a broader basis for constitutional avoidance than the other litigants.

Again, Vargas provides a distinct, consequential, and additional legal means of prevailing.

### D. Vargas's Focus on the Shared Duty of the Government and Courts to Facilitate a Remedy After Entitlement Is an Approach Vargas Should Be Able to Emphasize and Reflected in His Request for Relief

Vargas, other appellants, and the government articulate a common understanding of Due Process as described in *Nelson*. Vargas's opening brief repeatedly explains that, once entitlement is established, both the government and the courts have a duty to take reasonable steps to effectuate that entitlement. (VB:2, 15, 22-24 (Due Process); 34-35

13

(*Wilson* duty); 44-46; 49-52; 55-56). The duty to facilitate is a different framework which places the burden on the institutions that have institutional knowledge and can implement the remedy. Amicus's argument seeks to foreclose a path, issue by issue, regardless of whether there is no record of implementation. Vargas addresses these issues through an institutional framework emphasizing the shared duty of the government and the courts to effectuate an established entitlement.  As an example:

- Judge Lamberth accepts Constitutional failure as an outcome – a criminal justice system where the government offers no remedy to return funds where a federal court vacates the judgment. The truth is a

  district court has authority to make the system work and facilitate the

  remedy. (VB:53);

- Given the motion was to take steps there is a good case that the issue of mechanism is not ripe until the government pursues that particular one. (VB:55); and

- The district court is not powerless in the face of bureaucratic

uncertainty—it must ensure justice is done. If more information is needed from the government, the district court can and should demand it. If the specific pathway requires clarification, the district court should

direct further response. (VB:61).

Vargas places substantially greater emphasis on this duty-to-facilitate framework than any other participant. That framework is reflected in Vargas's specific request for relief directing both the government and the district court to take reasonable steps to effectuate repayment after entitlement is established. (VB:65). Neither the government nor the other appellants request comparable prospective direction.

Vargas should be able to explain this framework at oral argument.

Vargas argues this is a distinct, consequential, and additional legal framework for implementing a remedy for an established entitlement.

### E. Certain Other Distinctions in Vargas Analytical Framework from Other Appellants' and Government's Respective Frameworks Mean Non-Duplication

### 1. Certain distinctions and Areas of Non-Overlap Which Vargas Would Not Duplicate Unless Relevant to the Vargas Analytic Framework

Vargas's framework does not include a theory that the pardon itself independently entitles him to a refund. The government argues, in the alternative, that the pardon independently requires the refund under *Ex parte Garland*, 71 U.S. 333, 380 (1866). (GB:14).

The other appellants have an extensive discussion with amicus on the Little Tucker Act, which is about 12 pages between the two. Vargas's opening brief mentions the Little Tucker Act in describing Judge Bates's opinion in *St. Cyr*. (VB:44). Vargas argues the Judgment Fund, 31 U.S.C. § 1304, is a payment mechanism, not a jurisdictional grant, and does not specify any required source of jurisdiction for a qualifying judgment. (ARB:21).

The government does not address, and has never agreed to, the Judgment Fund as a mechanism for remedy in the instant cases, making the government an unsuitable advocate for this mechanism.

Vargas did not address 28 U.S.C. § 2465 as a potential path to the Judgment Fund. Between the other appellants and amicus there are about 6 pages devoted to this topic.

While Vargas mentions *Knote v. United States*, 95 U.S. 149 (1877) numerous times in his opening brief, he does so to address the Moss opinion with the same basic point—*Knote* does not involve a vacatur and, thus, is not relevant to Vargas's entitlement theory, even if there may be general relevance on Appropriation's Clause issues. By contrast, the government, other appellants and amicus engage in more detailed discussion of *Knote* across several subtopics.

### 2.  Certain Areas of Overlap

On the case law in Sections II.D.(1)-(4)(VB:22-33) of the Vargas opening brief — such as *Nelson*, *Hewitt*, and numerous cases addressing application of the *ab initio* doctrine to return penalties in vacated judgments — Vargas is largely in agreement with the government and the other appellants, and in disagreement with amicus. The distinction in approaching such case law as interpretive of what the D.C. Circuit order states is discussed above.

With respect to the mechanism discussed in Vargas's opening brief regarding 31 U.S.C. §1322(b)(2)— Vargas substantially agrees with the government and other appellants and disagrees with amicus. (VB:55-58; ARB:21-22). Vargas provides one additional permissible interpretation

that the government and other appellants have not advanced. Vargas does not present the choice of mechanism of remedy as within the scope of the D.C. Circuit order. Vargas could touch on these two points but is also prepared to defer generally.

### III.   ORAL ARGUMENT BY VARGAS'S COUNSEL WOULD AID THE DECISIONAL PROCESS AND PROTECT VARGAS'S PROCEDURAL RIGHTS

### A. Vargas's Counsel Is the Only Proper Advocate for His Distinct, Consequential and Additional Means of Prevailing and His Oral Argument Aids the Decisional Process

Neither the other appellants nor the government carry Vargas's primary arguments which are distinct, consequential, and additional means of prevailing.  Where their arguments overlap with Vargas's, many differ in sequence, hierarchy, and meaning relative to Vargas's scope and mandate rule framework. The government is on the opposite side of Vargas on jurisdiction and has never addressed the Judgment Fund or stated agreement with that mechanism. The other appellants' arguments often do little or no work for Vargas's position (e.g., the Little Tucker Act, § 2465). However, one presumes they are there for a purpose important to other appellants and they may use oral argument time on these issues.

Other participants cannot easily explain from Vargas's perspective how the Vargas distinct, consequential and additional means of Vargas prevailing interact with the arguments of other parties, or answer questions from the court regarding these Vargas arguments.

### B. Vargas is Vindicating His Own Rights and His Counsel Providing Oral Argument Aids the Decisional Process by Allowing the Proper Party the Opportunity

The right of repayment due to vacatur of his criminal judgment, Fifth Amendment due process, Fifth Amendment protection against takings, and the Sixth Amendment right to counsel in a criminal case are rights that belong to Vargas. The government is not vindicating a right at all in this appeal – or at least the government has not explained its own rights.   Relative to Vargas, the government holds duties under the vacatur and Fifth Amendment provisions at issue. Vargas is an appellant and the government is not. Vargas tailored the motion in district court whose denial is the subject of this appeal.  Vargas tailors his own appeal.

Vargas further has procedural rights and processes under FRAP designed for his appeal.  Vargas has an ordinary right of reply under Rule 28(c). Vargas sought this right but has been limited to 900 words,

which is not meaningful or ordinary. Rules 34(a)(1) and 34(a)(2) establish a presumption of oral argument for any party seeking it. Vargas is such a party.

Amicus is not a party and has no rights under any of the provisions described above. Amicus's role is to assist the Court through argument, not to vindicate any right belonging to Vargas or anyone else.

The other appellants are vindicating rights of their own. If they wish to join in a common statement or common argument, that is their right to choose. But no litigant can be forced to do so, and no other appellant's choices about how to tailor his own motion or appeal can tailor Vargas's or limit the tailoring or argument of Vargas's own case.

Vargas understands the construct that if similarly situated litigants provide substantially similar argument that may be duplication at oral argument that does not aid the decisional process.  Vargas would caution it is better to assure parties can advocate their position than assume duplication when there are different analytic frameworks among the parties. Rule 34(a)(2)(C) requires an unanimous determination for an exemption.  Here we have stated numerous

distinct, consequential, and additional arguments not made by other appellants and a different analytic framework of the combined scope of vacatur and mandate rule.  Further, given the position by Sullivan on reply, it is not clear Sullivan is a similarly situated party.  Vargas has criticized and distinguished the Sullivan opinion in his brief and pointed to the complications in his opposition to the motion to consolidate.

## IV.    The Procedural History and Circuit Court Rules Illustrate the Risk of Undervaluing Vargas's Voice after his Original Brief

The procedural history illustrates why Vargas raises these concerns now rather than waiting until oral argument is scheduled. First, consolidation was ordered over Vargas's objection, as set out in his opposition to the motion to consolidate. The Vargas opposition raised similar procedural concerns which Vargas now faces.

Further, in its own motion to consolidate, the government represented that it would file "one consolidated brief 'supporting the legal claim of appellants to reimbursement.'" Mot. to Consolidate at 7, Doc. 2139851. Vargas's legal claim to reimbursement runs through the district court having jurisdiction to grant the motion Vargas filed. At this juncture,

the Court must rely on the briefs to assess whether parties are aligned in appeal objectives.

Second, the Court did not accept the parties' proposed joint briefing schedule, which would have given Vargas an independent reply (Doc. 2150403); instead, the Court imposed a shared word pool that included the government. Doc. 2151520.  The net result of this approach resulted in only 900 words for Vargas's portion of the reply. Vargas has separately sought relief as to the briefing record through his motion for leave to file simultaneously lodged supplemental reply. Doc. 2181910; Doc. 2181813.

A similar type of risk now exists for oral argument. Circuit Rule 34(c)'s counsel caps, allocation of time under 34(d), and Circuit Rule 34(h)'s treatment of consolidated cases as one case combine to create the issue that concerns.

Vargas does not support any proposition that leaves him without meaningful oral argument time for his counsel to articulate, compare, apply and answer court questions about his distinct, consequential and additional means of legally prevailing.  Vargas argues the allocation of

time includes minimum amounts to address issues raised by each brief and be based on the subjects that should be covered at oral argument, not the number of appellants represented by a given counsel or represented under a given brief.  Vargas believes a minimum of 10 minutes of oral argument time is necessary for Vargas and would recommend greater allocation if the Court feels these arguments are consequential and warrant more questions.

### V.    Vargas's Separate Voice Presents No Case-Management Difficulty That Outweighs Benefit to the Court

The other appellants will be represented by a single counsel at any oral argument, who has confirmed that representation to this Court. Doc. 2180514. Those parties were involved in their own consolidated opening brief. Vargas did not participate in that opening brief but filed his own before consolidation. Vargas is not asking this Court to manage competing requests for oral arguments among numerous appellants; there is one counsel for Vargas, one for the other appellants, one for the government, and one for amicus, each representing the separate initial briefs.  Vargas seeks a meaningful opportunity for his own counsel to be heard on the distinct, consequential, and additional arguments

described above. Accommodating that request ensures one clearly defined voice to address clearly defined arguments; it does not open the door to any broader claim by any other party.

Vargas has not contested, and does not contest here, what any other party or amicus might meaningfully need for oral argument. The relevant standard is what each participant meaningfully needs to perform the traditional function of oral argument on the arguments that are actually theirs. Vargas addresses only his own meaningful need, tied to the specific, enumerated arguments described above.

Vargas reserves, if necessary, that the government (appellee) is not on the same side as Vargas for purposes of Oral argument issues under Circuit Rules 34(c) and (d) in the event the Court considers those provisions a reason to not honor the full request of Vargas to have his counsel provide oral argument.

The government's primary argument that the district court lacked jurisdiction because of non-adversity would foreclose the very type of district court order Vargas seeks after remand. In addition, the government has never agreed that the Judgment Fund is an available

mechanism and has never agreed that a finding of liability against the United States is an available or appropriate path to relief. In short, Vargas seeks the type of district court order entered in *Ballenger*, including a judgment that Vargas contends qualifies for payment from the Judgment Fund, while the government's jurisdictional argument would preclude the district court from entering such an order.

Vargas recognizes this statement is not a motion and that a Vargas motion may or may not be required.

## VI.  Closing

For the reasons above, Vargas argues he should be permitted a meaningful opportunity for his counsel to present oral argument to advocate, explain, and answer the Court's questions concerning his distinct, consequential, and additional legal means of prevailing. Vargas requests a minimum of 10 minutes of oral argument time for his counsel and would recommend greater allocation if the Court feels these arguments are consequential and warrant more questions.

Respectfully submitted,

/s/ Nandan Kenkeremath

Nandan Kenkeremath

2707 Fairview Court

Alexandria, Virginia 22311

(703) 407-9407


*Counsel for Appellant Hector Vargas Santos*


## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing statement contains 4,395 countable words as counted by the word-processing system used to prepare the brief (Microsoft Word), and that it has been prepared in a proportionally spaced typeface using Century Schoolbook 14-point font.


/s/ Nandan Kenkeremath

Nandan Kenkeremath

*Counsel for Appellant Hector Vargas Santos*


## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District

of Columbia Circuit by using the appellate CM/ECF system on July 21, 2026. I certify that all parties to this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Nandan Kenkeremath

Nandan Kenkeremath

*Counsel for Appellant Hector Vargas Santos*